# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2018AP1574 |
| COMPLETE TITLE: | In the matter of the mental commitment of J. W. K.: Portage County, Petitioner-Respondent, v. J. W. K., Respondent-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS

| | |
|---|---|
| OPINION FILED: | May 21, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 11, 2018 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Portage |
| JUDGE: | Thomas T. Flugaur |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | DALLET, J., concurs and dissents, joined by ABRAHAMSON, J. and A.W. BRADLEY, J. (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-appellant-petitioner, there were briefs filed by *Katie R. York*, assistant state public defender. There was an oral argument by *Katie R. York*.

For the petitioner-respondent, there was a brief filed by *Briana L. Sweeney* and *Interim Deputy Corporation Counsel*, Stevens Point. There was an oral argument by *Briana L. Sweeney*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1574
(L.C. No. 2013ME18B)

STATE OF WISCONSIN                    :          IN SUPREME COURT

**In the matter of the mental commitment of J.W.K.:**

**Portage County,**

      **Petitioner-Respondent,**

    **v.**

**J.W.K.,**

      **Respondent-Appellant-Petitioner.**

**FILED**

**MAY 21, 2019**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   REBECCA GRASSL BRADLEY, J.   An issue is moot when its resolution will have no practical effect on the underlying controversy.  In this review of a Chapter 51 recommitment order, we consider whether J.W.K.'s sufficiency-of-the-evidence challenge to the 2016 order extending his commitment is rendered moot because the 2016 order expired after the court extended his commitment in 2017 under a separate order.[1]  Reversing the

---

[1] Wisconsin Stat. § 51.20 uses "recommitment" and "extension of a commitment" interchangeably and we do as well.  See § 51.20(13)(g)2r ("Twenty-one days prior to expiration of the
(continued)

expired 2016 order for insufficient evidence would have no effect on subsequent recommitment orders because later orders stand on their own under the language of the statute. We therefore hold that J.W.K.'s sufficiency challenge is moot, and we affirm the court of appeals' decision dismissing the appeal.[2]

## I. BACKGROUND

¶2 J.W.K. was originally committed in February 2016 for six months under Wis. Stat. § 51.20 (2017-18).[3] In July 2016, Portage County filed a petition seeking to extend J.W.K.'s commitment for twelve months. The petition alleged J.W.K.: (1) was "currently committed for involuntary treatment" at an inpatient facility; (2) was a proper subject for commitment; (3) had the mental illness of schizophrenia; (4) was "presently dangerous as set forth in Sec. 51.20(1)(a) or based on

---

period of commitment under subd. 1., the department . . . shall file an evaluation of the individual and the recommendation of the department or county department regarding the individual's recommitment with the committing court and provide a copy of the evaluation and recommendation to the individual's counsel and the counsel designated under sub. (4). . . . A failure of the department or the county department to which an individual is committed to file an evaluation and recommendation under this subdivision does not affect the jurisdiction of the court over a petition for recommitment." (emphasis added); see also § 51.20(13)(g)3 ("Upon application for extension of a commitment by the department or the county department having custody of the subject, the court shall proceed under subs. (10) to (13)." (emphasis added)).

[2] Portage Cty. v. J.W.K., No. 2017AP1574, unpublished slip op. (Wis. Ct. App. Jan. 24, 2018).

[3] All subsequent references to the Wisconsin Statutes are to the 2017-18 version unless otherwise indicated.

[J.W.K.'s] treatment record . . . would be a proper subject for commitment if treatment were withdrawn as evidenced by: in the past when commitment has expired, [J.W.K.] has discontinued psychotropic medications and became a danger to self or others or demonstrated inability to care for self"; and (5) was "not competent to refuse psychotropic medication or treatment."

¶3 The circuit court held a hearing on the extension petition in August 2016. At the hearing, the County presented only the testimony of Dr. James Persing, who testified J.W.K. was suffering from schizophrenia, and the symptoms included "most prominently . . . delusional thinking and paranoia." Persing said that J.W.K. was being treated with medication, and this medication helped "organize [J.W.K.'s] thought processes" and clear his delusional thinking and hallucinations. Persing also opined that J.W.K. would be a proper subject for commitment if treatment were withdrawn. On cross-examination, Persing clarified that he based his opinion on J.W.K.'s "history" and "overall struggles with chronic mental illness for many years with variable levels of compliance with treatment, and leading up to a point of [a] variety of altercations." The doctor made clear J.W.K.'s "need for mental health commitment."[4]

¶4 J.W.K. testified on his own behalf. When his attorney asked whether he understood the hearing was to determine whether

---

[4] Persing based his opinion primarily on J.W.K.'s treatment history; he met with J.W.K. for "approximately five minutes or less."

his commitment would be extended, J.W.K. responded that the hearing "involve[d] more than that," and proceeded to tell the circuit court that his family was stealing his money by "breaking and entering into" his "private property and . . . private home . . . and removing" his important "documents." When his attorney interrupted to redirect him, J.W.K. told the circuit court he would continue treatment on an outpatient basis and take his medication even if he were not committed.

¶5 At the conclusion of the testimony, the circuit court found the statutory dangerousness standard was satisfied because "there is a substantial likelihood that [J.W.K.] would be a proper subject for commitment if treatment were withdrawn." Accordingly, the circuit court extended J.W.K.'s commitment for twelve months, ending on August 2, 2017.

¶6 J.W.K. did not timely appeal this order, but filed a pro se motion asking for an extension "due to the lack of exchange of information due to conflicting interest." The court of appeals granted the motion, reinstated J.W.K.'s postconviction rights and gave J.W.K. until April 24, 2017 to seek postcommitment relief. The State Public Defender's office appointed counsel for J.W.K. On April 3, 2017 his counsel filed a notice of intent to seek postcommitment relief and on August 7, 2017 filed a notice of appeal.

¶7 Meanwhile, with J.W.K.'s 2016 extension order expiring on August 2, 2017, the County filed a petition seeking another

4

twelve-month extension of J.W.K.'s commitment, which the circuit court granted after holding a hearing on July 21, 2017.

¶8 In September 2017, the court of appeals ordered J.W.K. to file a memorandum addressing whether his appeal of the August 2016 order was moot, given he filed his notice of appeal after a new order extending his commitment had been entered in July 2017. After considering submissions addressing mootness from J.W.K. and the County, the court of appeals dismissed the appeal as moot "because J.W.K. is no longer subject to the order being appealed." The court of appeals acknowledged that "exceptions to dismissal based on mootness exist, as for example, when an issue is of great public importance or arises frequently but evades review," but it did not consider the mootness exceptions because J.W.K. did "not argue that any of the exceptions appl[ied] in this case."

¶9 J.W.K. petitioned for review, arguing his appeal was not moot and asserting the evidence presented at the August 2016 extension hearing was insufficient to prove he was dangerous. We granted the petition.

## II. ANALYSIS

### A. Standard of Review

¶10 Mootness is a question of law we review de novo. PRN Assocs. LLC v. DOA, 2009 WI 53, ¶25, 317 Wis. 2d 656, 766 N.W.2d 559. J.W.K.'s argument requires us to interpret Wis. Stat. § 51.20; statutory interpretation is a question of law we review de novo. Waukesha Cty. v. J.W.J., 2017 WI 57, ¶14, 375 Wis. 2d 542, 895 N.W.2d 783. "[S]tatutory interpretation

5

'begins with the language of the statute.'" State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). We give statutory language "its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. If this process yields a plain meaning, our inquiry ends. Id.

### B. Discussion

¶11 Before addressing J.W.K.'s substantive claim on sufficiency of the evidence, we must first consider the threshold issue of whether J.W.K.'s appeal is moot. If the appeal is moot, then we do not reach J.W.K.'s sufficiency argument. "An issue is moot when its resolution will have no practical effect on the underlying controversy." PRN Assocs. LLC, 317 Wis. 2d 656, ¶25; see also City of Racine v. J-T Enters. of Am., Inc., 64 Wis. 2d 691, 700, 221 N.W.2d 869 (1974) ("This court has consistently adhered to the rule that a case is moot when 'a determination is sought which, when made, cannot have any practical effect upon an existing controversy.'" (quoted source omitted)).

> A moot case has been defined as one which seeks to determine an abstract question which does not rest upon existing facts or rights, or which seeks a judgment in a pretended controversy when in reality there is none, or one which seeks a decision in advance about a right before it has actually been asserted or contested, or a judgment upon some matter which when rendered for any cause cannot have any practical legal effect upon the existing controversy.

6

Fort Howard Paper Co. v. Fort Howard Corp., 273 Wis. 356, 360, 77 N.W.2d 733 (1956) (quoted source omitted); see also State ex rel. Ellenburg v. Gagnon, 76 Wis. 2d 532, 535, 251 N.W.2d 773 (1977).

¶12 Appellate courts generally decline to reach moot issues, and if all issues on appeal are moot, the appeal should be dismissed. See id.; PRN Assocs. LLC, 317 Wis. 2d 656, ¶¶25, 29. We may, however, choose to address moot issues in "exceptional or compelling circumstances." J-T Enters., 64 Wis. 2d at 702. There are several established exceptions under which this court may elect to address moot issues: (1) "the issues are of great public importance;" (2) "the constitutionality of a statute is involved;" (3) the situation arises so often "a definitive decision is essential to guide the trial courts;" (4) "the issue is likely to arise again and should be resolved by the court to avoid uncertainty;" or (5) the issue is "capable and likely of repetition and yet evades review." G.S. v. State, 118 Wis. 2d 803, 805, 348 N.W.2d 181 (1984). With these principles in mind, we turn to the record to evaluate whether J.W.K.'s appeal is moot.

¶13 The record is undisputed as to several critical facts. First, J.W.K. is no longer subject to the August 2016 recommitment order forming the basis for this appeal. That order lapsed when the court entered a new commitment order on

7

July 21 2017.[5] Second, J.W.K. does not allege any defects in the July 2017 recommitment order. This makes J.W.K.'s challenge to the 2016 commitment order moot.

¶14 An appeal of an expired commitment order is moot. See Winnebago Cty. v. Christopher S., 2016 WI 1, ¶¶30-31, 366 Wis. 2d 1, 878 N.W.2d 109 ("In Christopher's case, the issues are moot because he is no longer subject to the orders being appealed.").[6] Reversing J.W.K.'s expired 2016 order "will have no practical effect on the underlying controversy," see PRN Assocs. LLC, 317 Wis. 2d 656, ¶25, because he is no longer subject to the 2016 order.

¶15 J.W.K. acknowledges the apparent lack of a live controversy, but he argues this case is not moot, and urges the court to address his sufficiency argument. He hinges his argument on what he construes to be different evidentiary standards governing initial commitment orders versus recommitment orders. J.W.K. contends a reversal of the August 2016 recommitment order would necessarily invalidate all later extensions, creating a domino effect voiding subsequent recommitment orders. Citing State ex rel. Serocki v. Circuit

---

[5] J.W.K. is no longer subject to the July 21, 2017 commitment order; it was in effect for only twelve months and expired in July 2018.

[6] In Winnebago Cty. v. Christopher S., 2016 WI 1, 366 Wis. 2d 1, 878 N.W.2d 109, we nevertheless exercised our discretion to address the issues raised (despite their mootness) because they were "of great public importance" and "likely to evade appellate review." Id., ¶32.

Court for Clark Cty., 163 Wis. 2d 152, 471 N.W.2d 49 (1991), J.W.K. maintains a recommitment order is merely a continuation of the original commitment and creates a chain linking each prior commitment order to any extension that follows it. Under J.W.K.'s theory, reversing the August 2016 recommitment order nullifies any subsequent commitment order, thereby requiring reversal of the July 2017 order and any succeeding recommitment order. J.W.K. contends reversal of the August 2016 order would create a gap between the original commitment in February 2016 and the July 2017 recommitment order, thereby making the commitment orders no longer consecutive. J.W.K. argues that this break in the chain means the State must start over with an original commitment instead of petitioning for an extension. J.W.K. describes the original commitment procedures and burden of proof as "more onerous" than those required to extend the commitment. J.W.K. argues that reversal of the 2016 order would mean the circuit court lacked competency to issue the 2017 extension order. J.W.K. also invokes due process, contending that if the 2016 order falls, his commitment under the 2017 order deprived him of his liberty without the requisite showing that he was mentally ill and dangerous. The concurrence/dissent echoes J.W.K.'s arguments, maintaining that the original commitment and any extensions of that commitment "create[] a chain linking each prior order to any extension that follows." Concurrence/dissent, ¶35. We disagree.

¶16 "[C]ommitment for any purpose constitutes a significant deprivation of liberty that requires due process

9

protection."  Jones v. United States, 463 U.S. 354, 361 (1983) (quoted source omitted). The County comports with due process when it "confine[s] a mentally ill person if it shows 'by clear and convincing evidence that the individual is mentally ill and dangerous.'"  Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (quoting Jones, 463 U.S. at 362).  The commitment, however, cannot continue after the constitutional basis for it ceases to exist; the findings of mental illness and dangerousness must be current, not retrospective.  See Foucha, 504 U.S. at 77-78. While the Supreme Court determined that the Constitution requires a showing of dangerousness, and not mental illness alone, it "has declined to prescribe 'strict boundaries for legislative determinations of what degree of dangerousness is necessary for involuntary commitment.'"  See State v. Dennis H., 2002 WI 104, ¶13, 255 Wis. 2d 359, 647 N.W.2d 851 (quoting State v. Post, 197 Wis. 2d 279, 312, 541 N.W.2d 115 (1995)).

¶17 To initiate commitment proceedings involving a mentally ill individual under Wis. Stat. § 51.20, the County must file a petition alleging the individual is (1) mentally ill and a proper subject for treatment, and (2) "[t]he individual is dangerous."  § 51.20(1)(a)1-2; see also J.W.J., 375 Wis. 2d 542, ¶18.  The statute contains five standards by which the County may show the individual is dangerous.  § 51.20(1)(a)2.a-e.  Each requires the County to identify recent acts or omissions demonstrating that the individual is a danger to himself or to others.  See id.  During the final hearing, the County bears the burden of proving the allegations in the petition by clear and

10

convincing evidence. § 51.20(13)(e); J.W.J., 375 Wis. 2d 542, ¶19. If the grounds in the petition are proven, then the court "shall" order commitment. § 51.20(13)(a)3; see also M.J. v. Milwaukee Cty. Combined Cmty. Servs. Bd., 122 Wis. 2d 525, 529-30, 362 N.W.2d 190 (Ct. App. 1984). The initial period of commitment cannot exceed six months. § 51.20(13)(g)1.

¶18 Wisconsin Stat. § 51.20 allows the initial commitment order to be extended for "a period not to exceed one year." § 51.20(13)(g)1, (13)(g)3.

> Upon application for extension of a commitment by the department or the county department having custody of the subject, the court shall proceed under subs. (10) to (13).[7] If the court determines that the individual is a proper subject for commitment as prescribed in sub. (1)(a)1. and evidences the conditions under sub. (1)(a)2. or (am) . . . it shall order judgment to that effect and continue the commitment[.]

§ 51.20(13)(g)3 (emphasis added). An extension requires the County to prove the same elements by clear and convincing evidence: (1) the individual is mentally ill and a proper subject for treatment, and (2) the individual is dangerous. See Wis. Stat. § 51.20(1)(a), (am); see also J.W.J., 375 Wis. 2d 542, ¶20 ("Upon each petition to extend a term of commitment, a county must establish the same elements with the

---

[7] Wisconsin Stat. § 51.20(10) details the requirements for hearings, subsection (11) addresses jury trials, subsection (12) delineates an exception to the requirement of open hearings, and subsection (13) deals with the disposition of the petition for involuntary commitment. § 51.20(10)-(13).

same quantum of proof."). However, in addition to the five standards for showing dangerousness by recent acts or omissions under § 51.20(1)(a)2.a-e, the County may prove dangerousness under § 51.20(1)(am).

¶19 Because an individual's behavior might change while receiving treatment, Wis. Stat. § 51.20(1)(am) provides a different avenue for proving dangerousness if the individual has been the subject of treatment for mental illness immediately prior to commencement of the extension proceedings:

> If the individual has been the subject of inpatient treatment for mental illness . . . immediately prior to commencement of the proceedings as a result of . . . a commitment or protective placement ordered by a court under this section . . . the requirements of a recent overt act, attempt or threat to act under par. (a)2. a. or b., pattern of recent acts or omissions under par. (a)2. c. or e., or recent behavior under par. (a)2. d. may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn[.]

§ 51.20(1)(am) (emphasis added). Under this provision, if the individual who is the subject of extension proceedings is under commitment "immediately prior" to the extension proceedings, then the County may, as an alternative to the options outlined in § 51.20(1)(a)2.a-e, prove dangerousness by showing "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." § 51.20(1)(am). This paragraph recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions

12

demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur. In this way, paragraph (am) functions as an alternative evidentiary path, reflecting a change in circumstances occasioned by an individual's commitment and treatment. However, dangerousness remains an element to be proven to support both the initial commitment and any extension.

¶20 After the initial commitment period, which may last no longer than six months, "all subsequent consecutive orders of commitment of the individual may be for a period not to exceed one year." Wis. Stat. § 51.20(13)(g)1. The circuit court must hold a hearing on the petition for extension before the previous order expires or it loses competency to extend the commitment. See G.O.T. v. Rock Cty., 151 Wis. 2d 629, 633, 445 N.W.2d 697 (Ct. App. 1989) (explaining that "[a]n initial commitment . . . expires at the end of six months and cannot be extended beyond that period unless a statute permits its extension," and "[f]or that reason, the trial court must hold the extension hearing before the initial commitment expires"); Wis. Stat. § 51.20(13)(g)1, 3 (allowing for extension of consecutive orders of commitment); see also City of Eau Claire v. Booth, 2016 WI 65, ¶21, 370 Wis. 2d 595, 882 N.W.2d 738 ("a circuit court may lose competency to enter judgment in a particular case if statutory requirements are not met").

¶21 J.W.K.'s domino theory that each extension depends on the validity of previous commitment orders is not supported by

13

the text of the statute. First, reversing the August 2016 recommitment order does not retroactively deprive the circuit court that issued a subsequent commitment order of competency. The statute permits the extension of an individual's commitment for up to one year at a time, and contemplates consecutive orders of commitment. See Wis. Stat. § 51.20(13)(g)1. As long as the extension is made prior to the expiration of the previous commitment order, the circuit court may order the extension if the County proves its case under the statutory criteria.[8] See § 51.20(13)(g)1, 3; G.O.T., 151 Wis. 2d at 633. Each order must independently be based upon current, dual findings of mental illness and dangerousness; accordingly, the sufficiency of the evidence supporting prior orders has no impact on any subsequent order.

¶22 While J.W.K. correctly notes the circuit court lacks competency to extend a commitment order once the previous order expires, the August 2016 order remained in effect at the time J.W.K.'s commitment was extended in July 2017. Accordingly, the circuit court had competency to extend the commitment. An appellate court's later conclusion that the evidence was

---

[8] The concurrence/dissent concludes that a later judicial determination of insufficient evidence to support the August 2016 order renders that order retroactively invalid, resulting in the expiration of the original commitment before any valid extension. Concurrence/dissent, ¶¶34,36. The concurrence/dissent misunderstands the text of Chapter 51. When the commitment was extended in July 2017, the August 2016 order remained in place, and as a factual matter, the orders were therefore consecutive. Accordingly, the circuit court retained competency to extend J.W.K.'s commitment in 2017.

14

insufficient to support the August 2016 extension order would not retroactively change the fact that at the time the circuit court entered the extension order in July 2017, the prior order had not expired; therefore, the circuit court retained competency to enter the unchallenged July 2017 order.

¶23 Second, J.W.K. fails to identify any provision in Wis. Stat. § 51.20 making the validity of an unchallenged recommitment order vulnerable to the invalidation on appeal of the previous recommitment order. Contrary to the concurrence/dissent's insistence that "[t]he statutory language supports [the] premise" that "an extension order is a continuation of the original commitment and creates a chain linking each prior order to any extension that follows,"[9] no such language appears in the statute, and the availability of the alternate evidentiary standard in paragraph (am) requires nothing more than "the individual ha[ving] been the subject of inpatient treatment for mental illness . . . immediately prior to commencement of the proceedings as a result of . . . a commitment or protective placement ordered by a court under this section[.]" § 51.20(1)(am). The statute says nothing about the validity of the preceding order of commitment or protective placement and does not condition the availability of the alternate means of establishing dangerousness on the legitimacy of the prior order for treatment. This makes sense, because the alternate means for establishing dangerousness is predicated

---

[9] Concurrence/dissent, ¶35.

15

upon the fact that treatment may have had the desired effect of ending the dangerous behaviors that led to the individual's original commitment in the first place. "Because of the therapy received, evidence of recent action exhibiting 'dangerousness' is often nonexistent," and "the emphasis [during extension proceedings] is on the attendant consequence to the patient should treatment be discontinued." M.J., 122 Wis. 2d at 531. Despite the absence of recent acts demonstrating dangerousness, an individual may nevertheless pose a danger to himself or to others based on a substantial likelihood that he would exhibit those behaviors if treatment were withdrawn. Paragraph (am) "allow[s] extension of a commitment when the patient's condition has not improved enough to warrant discharge." Serocki, 163 Wis. 2d at 160 (quoted source omitted).

¶24 Each extension hearing requires the County to prove the same elements with the same quantum of proof required for the initial commitment. See Wis. Stat. § 51.20(13)(e), (g)3 ("The petitioner has the burden of proving all required facts by clear and convincing evidence."). The dangerousness standard is not more or less onerous during an extension proceeding; the constitutional mandate that the County prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered. Each extension hearing requires proof of current dangerousness. It is not enough that the individual was at one point a proper subject for commitment. The County must prove the individual "is dangerous." § 51.20(1)(a)2 and (13)(g)3 (emphasis added). The alternate avenue of showing

16

dangerousness under paragraph (am) does not change the elements or quantum of proof required.  It merely acknowledges that an individual may still be dangerous despite the absence of recent acts, omissions, or behaviors exhibiting dangerousness outlined in § 51.20(1)(a)2.a-e.

¶25  Accordingly, even if we assume the insufficiency of the County's proffered evidence to support its petition for an extension of J.W.K.'s commitment in August 2016, J.W.K. received due process during the July 2017 recommitment proceedings because the County was required to establish the same elements required for any commitment or recommitment:  J.W.K.'s mental illness and dangerousness.  J.W.K. does not suggest the County failed to carry its burden of proof during the 2017 proceeding; therefore, J.W.K.'s due process rights were fully protected.[10]

¶26  We reject J.W.K.'s and the concurrence/dissent's claim that Serocki supports J.W.K.'s domino theory.  The issue in Serocki was whether an individual being committed timely filed a request for substitution prior to "any preliminary contested matters."  Serocki, 163 Wis. 2d at 156-57.  Because a recommitment hearing is not "an entirely new proceeding" the "circuit court continues to receive evidence in the same case"

---

[10] Contrary to the concurrence/dissent's characterization of our due process analysis as "pay[ing] lip service" to constitutional protections afforded the mentally ill, we explain that because subsequent extension proceedings require the dual showings of mental illness and current dangerousness, the proceedings in this case protected J.W.K.'s due process rights. The concurrence/dissent misreads the applicable statutes (and apparently this opinion) in concluding otherwise.

17

and may rely on "the individual's present condition and past response to treatment." Id. at 159-60. We concluded a recommitment hearing was "a continuation of the original commitment proceeding and previous recommitment hearings" in the context of the substitution request under Wis. Stat. § 801.58(1) (1989-90). Serocki, 163 Wis. 2d at 156, 160. This conclusion, however, was driven by the language of § 801.58(1) (1989-90) and limited to "the context of a request for substitution." Serocki, 163 Wis. 2d at 160. Because a substitution request must be made prior to the circuit court hearing any preliminary contested matters, as a procedural matter the individual subject to commitment proceedings must make his substitution request in the context of the original commitment proceedings, not later.

¶27 However, the fact that recommitment proceedings are procedurally part of the original commitment action does not mean that the requisite findings of mental illness and dangerousness necessary to support a recommitment may be borrowed from the original proceeding. To the contrary, in Serocki, we explicitly acknowledged that "the circuit court must make a new determination of the individual's suitability for commitment at the recommitment hearing." Id. at 159. The "evidence presented at each recommitment hearing may be different from evidence presented at the original commitment proceeding or a previous recommitment hearing." Id. We never stated or implied that the validity of each recommitment order depended on the validity of every commitment order preceding it.

18

¶28 Because a decision invalidating the August 2016 recommitment order has no impact on subsequent extensions, each of which independently requires the County to meet the statutory burden of proof, J.W.K.'s argument that insufficient evidence supported the August 2016 order is moot.[11]

¶29 J.W.K. argues that concluding his case is moot may deprive him of meaningful appellate review because appellate proceedings in Chapter 51 commitments are rarely completed before a subsequent recommitment order is entered. The concurrence/dissent similarly laments the "lack of remedy," which it considers "especially troubling in light of the fact that an extension order is valid for no more than one year, and therefore, by the time an appeal is heard, there is likely to be a subsequent extension order in effect." Concurrence/dissent, ¶37 (footnote omitted). That a recommitment order will likely expire before appellate proceedings conclude does not transform a moot issue into a live controversy. Rather, such concerns may be addressed under the well-established exceptions to dismissal for mootness, particularly, issues capable of repetition yet

---

[11] Our holding that J.W.K.'s sufficiency challenge is moot is limited to situations where, as here, no collateral implications of the commitment order are raised. J.W.K. points out there may be "a variety of reasons other issues in chapter 51 cases are not moot even though a subsequent extension order has been entered or the order expired," including "the implications of a firearms ban when initially committed, potential civil claims related to an illegal commitment," and any attempt by the County to recover its cost of care. J.W.K. does not argue any of these collateral circumstances; therefore, we do not address them.

evading review.   In G.S. v. State, we explained the exceptions to dismissal for mootness include situations involving:   (1) "issues [] of great public importance;" (2) "the constitutionality of a statute;" (3) issues that arise so often "a definitive decision is essential to guide the trial courts;" (4) "issue[s] . . . likely to arise again and [that] should be resolved by the court to avoid uncertainty;" or (5) an issue "capable and likely of repetition and yet evades review because the appellate process usually cannot be completed and frequently cannot even be undertaken within a time that would result in a practical effect upon the parties."   G.S., 118 Wis. 2d at 805 (emphasis added).

¶30   J.W.K. makes no argument that any of the exceptions to dismissal for mootness apply, and his sufficiency challenge does not appear to fit into any of the exceptions.   J.W.K.'s sufficiency challenge is fact-specific. While it is undoubtedly extremely important to J.W.K., the issue is not of great public importance; the sufficiency of the evidence will be different in each case.   J.W.K. raises no arguments concerning the constitutionality of Wis. Stat. § 51.20.   Additionally, we do not perceive a lack of definitive guidance on the issue J.W.K. raises, or uncertainty in the lower courts that warrants our intervention.   Finally, this case is not "likely of repetition." See G.S., 118 Wis. 2d at 805.   The "'capable of repetition, yet evading review' doctrine" is limited to situations involving "a reasonable expectation that the same complaining party would be subjected to the same action again."   State ex rel. Clarke v.

20

_Carballo_, 83 Wis. 2d 349, 357, 265 N.W.2d 285 (1978) (quoting _Weinstein v. Bradford_, 423 U.S. 147, 149 (1975) (emphasis added)). This is not the case for J.W.K. He argues the evidence was insufficient during a particular hearing; he raises no issues concerning the subsequent application of § 51.20 to him under later recommitment orders.

### III. CONCLUSION

¶31 We agree with the court of appeals and hold J.W.K.'s sufficiency of the evidence argument is moot because J.W.K. is no longer subject to the recommitment order he is appealing. Accordingly, we affirm the court of appeals' decision dismissing J.W.K.'s appeal as moot.

_By the Court._——The decision of the court of appeals is affirmed.

¶32 REBECCA FRANK DALLET, J. *(concurring in part, dissenting in part).* The majority opinion concludes that because J.W.K. received due process during the July 2017 hearing, the validity of the August 2016 extension order is irrelevant and J.W.K.'s challenge to that order is moot.[1] I respectfully disagree. I conclude that the sufficiency of the evidence presented at J.W.K.'s August 2016 extension hearing determines the validity of the August 2016 extension order and necessarily also determines the validity of any subsequent extension orders. Thus, although J.W.K. is no longer subject to the order being appealed, the appeal from the August 2016 extension order is not moot. Accordingly, I examine the evidence presented at the August 2016 extension hearing and conclude that the circuit court's finding of current dangerousness was not erroneous.

¶33 In order to confine someone who is mentally ill, the County must show by clear and convincing evidence that the person is currently mentally ill and dangerous. Foucha v. Louisiana, 504 U.S. 71, 80 (1992). There are two evidentiary paths to prove dangerousness pursuant to Wis. Stat. § 51.20.

---

[1] The majority uses the term "recommitment," however, I use the language included in the statutory provision which governs commitment beyond the initial commitment order. See majority op., ¶1 n.1. That section refers to the filing of an "application for extension of a commitment" and requires proof that the individual "is in need of continued commitment" in order for the circuit court to enter judgment to "continue the commitment." See Wis. Stat. § 51.20(13)(g)3.

The first path, applicable to initial commitment proceedings, requires the County to identify recent acts or omissions demonstrating the individual is a danger to themselves or others, pursuant to § 51.20(1)(a)2.a.-e. In what the majority opinion refers to as the "alternative evidentiary path," the County may prove current dangerousness by showing there is "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn," pursuant to § 51.20(1)(am). Majority op., ¶19. This alternative evidentiary path is only available if the individual has been the subject of inpatient treatment for mental illness "immediately prior to commencement of the proceedings as a result of . . . a commitment . . . under this section." § 51.20(1)(am) (emphasis added).[2] The circuit court "must make a new determination of the individual's suitability for commitment" at each extension hearing and evidence presented at each extension hearing "may be different from evidence presented at the original commitment proceeding." State ex rel. Serocki v. Circuit Court for Clark Cty., 163 Wis. 2d 152, 159, 471 N.W.2d 49 (1991).

¶34 As recognized by the majority, the circuit court lacks competency to extend a commitment order once the initial commitment order has expired. Majority op., ¶22. See G.O.T. v.

---

[2] There are other paths in Wis. Stat. § 51.20(1)(am) that the County could follow, but those paths are not applicable here.

Rock Cty., 151 Wis. 2d 629, 633, 445 N.W.2d 697 (Ct. App. 1989)("[a]n initial commitment . . . expires at the end of six months and cannot be extended beyond that period unless a statute permits its extension"). If current dangerousness was not established at the August 2016 extension hearing, the August 2016 extension order was invalid. As such, the initial commitment order would have expired prior to it being extended and the circuit court would have lacked competency to enter any subsequent extension orders. Contrary to the majority opinion, even if dangerousness were established during the July 2017 hearing, this does not cure the circuit court's lack of competency to issue an extension order in July 2017 or render the two orders somehow permissibly "consecutive." Majority op., ¶21 n.8.

¶35 J.W.K. properly asserts that an extension order is a continuation of the original commitment and creates a chain linking each prior order to any extension that follows. The statutory language supports this premise. See Wis. Stat. § 51.20(13)(g)3. (referring to the court order after the filing of an "application for extension" as an order to "continue the commitment" requiring proof that the individual "is in need of continued commitment"); see also § 51.20(1)(am) (creating an alternative path to prove current dangerousness if the individual is subject to a commitment order "immediately prior" to the extension hearing). Additionally, in Serocki, in the context of a request for substitution, this court concluded that the legislature intended for an individual's extension hearing

3

to be "a continuation of the original commitment proceeding and previous recommitment hearings." Serocki, 163 Wis. 2d at 154.

¶36 If the requirements of Wis. Stat. § 51.20(1)(am) were not met at the August 2016 extension hearing, J.W.K. would not have been subject to a valid commitment order immediately prior to the July 2017 hearing. Once the chain of commitment was broken, the County would be required to prove current dangerousness as it did at the initial commitment hearing, by establishing a factor set forth in § 51.20(1)(a)2.a.-e. If the County did not do so, any subsequent extension orders would be rendered invalid.[3]

¶37 The importance of the circuit court making a sufficient finding of current dangerousness prior to an extension of commitment cannot be overstated. The United States Supreme Court has emphasized that in order to confine a mentally ill individual, due process requires the County to show by clear and convincing evidence that the individual is currently mentally ill and dangerous. Foucha, 504 U.S. at 80; see also Jones v. United States, 463 U.S. 354, 362 (1983). Absent this finding, any extension order will not only violate Wis. Stat. § 51.20, but also J.W.K.'s due process rights. Although the majority pays lip service to the due process protection required

---

[3] At the July 2017 hearing, the County followed the alternative evidentiary path to prove current dangerousness pursuant to Wis. Stat. § 51.20(1)(am). The parties did not brief the issue of whether that testimony also established current dangerousness pursuant to § 51.20(1)(a)2.a.-e. and therefore I will not address it.

4

to deprive a mentally ill individual of their fundamental right to liberty, it provides no consequence for a County's failure to prove current dangerousness and the corresponding violation of due process. A lack of remedy is especially troubling in light of the fact that an extension order is valid for no more than one year,[4] and therefore, by the time an appeal is heard, there is likely to be a subsequent extension order in effect. According to the majority, the County can violate an individual's due process rights without any practical effect. See majority op., ¶14. The majority ignores the possible remedy for an unconstitutional deprivation of liberty that would have a practical effect on any individual and would help to ensure the protection of due process rights for the mentally ill: release from confinement.

¶38 Because I find that J.W.K.'s appeal of the sufficiency of his August 2016 extension order is not moot, I reach the issue J.W.K. sought to raise on appeal: whether the County proved by clear and convincing evidence at the August 2016 extension hearing that J.W.K. would still be a proper subject for commitment if treatment were withdrawn.[5] This court defers to the circuit court's factual findings unless they are clearly erroneous. See Phelps v. Physicians Ins. Co. of Wis., Inc., 2009 WI 74, ¶34, 319 Wis. 2d 1, 768 N.W.2d 615.

---

[4] See Wis. Stat. § 51.20(13)(g)1.

[5] The circuit court extended J.W.K.'s commitment prior to completion of briefing on appeal.

5

¶39 On direct examination, Dr. James Scott Persing testified that he examined J.W.K. and that, in his opinion, there was a substantial likelihood that J.W.K. would be a proper subject for commitment if treatment were withdrawn, pursuant to Wis. Stat. § 51.20(1)(am). Had this been the extent of the testimony to prove the dangerousness prong, J.W.K.'s argument regarding the sufficiency of the evidence would be stronger. However, the hearing continued and Dr. Persing was questioned on cross-examination regarding the basis for his opinion. Dr. Persing responded that he based his opinion: "[o]n the history of the overall struggles with chronic mental illness for many years with variable levels of compliance with treatment, and leading up to a point of variety of altercations, or need for mental health commitment." Dr. Persing further described how assessment of J.W.K. was difficult because he had been isolative and was not participating in therapeutic and recreational activities.

¶40 The circuit court found that based upon the testimony of Dr. Persing and J.W.K., there was a substantial likelihood that J.W.K. would be a proper subject for commitment if treatment were withdrawn. While the testimony supporting Dr. Persing's opinion as to J.W.K.'s current dangerousness was minimal, I nevertheless conclude that the findings of the circuit court are not clearly erroneous and must be upheld.

¶41 In sum, I conclude that J.W.K.'s appeal of his August 2016 extension order is not moot and therefore I would reverse the court of appeals' decision. Further, I reach the issue

6

regarding the sufficiency of the evidence presented at the August 2016 extension hearing, which the majority opinion and court of appeals failed to address, and conclude that the circuit court's finding that J.W.K. was dangerous was not clearly erroneous. Therefore, I concur in part and would affirm the circuit court's August 2016 extension order.

¶42 For the foregoing reasons, I concur in part and dissent in part.

¶43 I am authorized to state that Justices SHIRLEY S. ABRAHAMSON and ANN WALSH BRADLEY join this concurrence/dissent.

7