**COURT OF APPEALS
DECISION
DATED AND FILED**

**July 15, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP274-FT**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019ME20

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF S.N.W.:

FOND DU LAC COUNTY,

    PETITIONER-RESPONDENT,

  V.

S.N.W.,

    RESPONDENT-APPELLANT.

      APPEAL from orders of the circuit court for Fond du Lac County: PETER L. GRIMM, Judge. *Affirmed*.

¶1     REILLY, P.J.[1]   S.N.W. appeals from an order of the circuit court extending his involuntary commitment and from an order for involuntary medication and treatment.  S.N.W. argues that Fond du Lac County (the County) failed to establish that he is dangerous pursuant to WIS. STAT. § 51.20(1)(a), (am). We conclude that the evidence supports the circuit court's conclusion that S.N.W. is mentally ill, is a proper subject for treatment, and would be a proper subject for commitment if treatment were withdrawn.   *See* §  51.20(1)(a)1.-2., (am). Accordingly, we affirm.

## BACKGROUND

¶2     S.N.W. was first subject to orders for involuntary commitment and involuntary medication and treatment in February 2019.[2]   Those orders were effective for six months.  In June 2019, the County petitioned to extend S.N.W's commitment based on an examination report by Dr. J.R. Musunuru, M.D., in support of the extension.

¶3     In August 2019, the circuit court held an extension hearing. Musunuru was the only witness to testify, and the County also introduced his examination report into evidence.  According to Musunuru, S.N.W. "has been suffering from chronic mental illness,"[3] has reported in the past hearing voices,

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version.

[2] We  upheld  these  orders  on  appeal.   *Fond  du  Lac  County  v.  S.N.W.*, No. 2019AP2073, unpublished slip op. (WI App June 17, 2020).

[3] At  the  hearing,  Musunuru  testified  that  S.N.W.  was  diagnosed  with  schizophrenia, although his report reflected "Schizoaffective Disorder—Bipolar Type."  The "mental illness" element of WIS. STAT. § 51.20(1)(a)1. is not being challenged by S.N.W., and we need not address whether schizophrenia and "Schizoaffective Disorder—Bipolar Type" are separate diagnoses and constitute a "contradict[ion]" as alleged by S.N.W.

and has displayed paranoia to the point that he was "afraid to put food into his mouth thinking about it being poisoned." Musunuru testified that S.N.W. is a proper subject for treatment and that his condition had improved as a result of the treatment, but he is incapable of understanding the advantages and disadvantages of taking the medication, which led to S.N.W. "cheeking" his medications to avoid taking them. Musunuru opined that "[S.N.W.] can be a danger to himself or others if he's not taking the treatment." When pressed on cross-examination, Musunuru explained that S.N.W. was "getting into fights or arguments," and it was Musunuru's understanding that S.N.W. was threatening people during these arguments, although he was unable to detail what exact threats were made. Musunuru explained that it was this "threatening behavior [that] led to change out his medications a few months ago." Musunuru concluded, based on S.N.W.'s treatment record, that S.N.W. would be a proper subject for commitment if treatment were withdrawn.

¶4     The circuit court granted the County's request for an extension and entered the orders for the extension of the involuntary commitment and involuntary medication and treatment effective for one year.[4] S.N.W. appeals.

## DISCUSSION

¶5     WISCONSIN STAT. § 51.20 governs involuntary commitment for treatment. To involuntarily commit a person, the county has the burden to prove by clear and convincing evidence that the person is (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous. *See* § 51.20(1)(a)1.-2., (13)(e); *Fond du*

---

[4] S.N.W. does not present any arguments concerning the order for involuntary medication and treatment. We address it no further.

*Lac County v. Helen E.F.*, 2012 WI 50, ¶20, 340 Wis. 2d 500, 814 N.W.2d 179; *see also* **Portage County v. J.W.K.**, 2019 WI 54, ¶17, 386 Wis. 2d 672, 927 N.W.2d 509. The circuit court may extend the individual's commitment for up to one year. Sec. 51.20(13)(g)1.; *J.W.K.*, 386 Wis. 2d 672, ¶¶17-18. The same standards apply to extensions of the commitment, except the county may satisfy the showing of dangerousness by demonstrating that "there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am); *J.W.K.*, 386 Wis. 2d 672, ¶19.

¶6      WISCONSIN STAT. § 51.20(1)(am) recognizes that "an individual's behavior might change while receiving treatment" and, accordingly, "provides a different avenue for proving dangerousness if the individual has been the subject of treatment for mental illness immediately prior to commencement of the extension proceedings" as the individual "may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior."[5] *J.W.K.*, 386 Wis. 2d 672, ¶19. In that way, § 51.20(1)(am) is an "alternative evidentiary path, reflecting a change in circumstances occasioned by an individual's commitment and treatment." *J.W.K.*, 386 Wis. 2d 672, ¶19. "However, dangerousness remains an element to be proven to support both the initial commitment and any extension." *Id.* "Each extension hearing requires the County to prove the same elements with the same quantum of proof required for the initial commitment." *Id.*, ¶24. "The dangerousness standard is not more or

---

[5] The specific parameters of WIS. STAT. § 51.20(1)(am) have recently been the subject of cases in this court as well as our supreme court. *Langlade Cty. v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277; *Winnebago County v. S.H.*, No. 2019AP2277-FT, slip op. recommended for publication (WI App June 17, 2020).

less onerous during an extension proceeding; the constitutional mandate that the County prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered." *Id.*

¶7 Our review of an extension order presents a mixed question of fact and law. *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783. We will uphold the court's findings of fact unless clearly erroneous. *Id.* Whether the facts in the record satisfy the statutory standard for recommitment is a question of law that this court reviews de novo. *Id.*

¶8 S.N.W. argues that the County's evidence was insufficient to prove S.N.W. is dangerous, claiming that "[i]nstead of demonstrating a substantial likelihood that S.N.W. will cause physical harm to himself or others absent continued commitment … the county showed that S.N.W. remains 'boisterous' and 'argumentative." The County disagreed, arguing that the testimony and report of Musunuru "showed there was a substantial probability that physical harm to others would ensue if treatment were withdrawn" pursuant to WIS. STAT. § 51.20(1)(a)2.b. and (1)(am). We conclude that pursuant to § 51.20(1)(am), Musunuru's testimony sufficiently established that S.N.W. is a proper subject for commitment if treatment is withdrawn.

¶9 The evidence in the record before us establishes that S.N.W. has a history of "singling out a staff member … to accuse them of being against him, having paranoid thoughts and behaviors toward staff and others, and delusional beliefs." These thoughts, behaviors, and beliefs have then caused S.N.W. to "get[] into fights or arguments," which "will escalate and he will get into some trouble." Musunuru testified that it was his "understanding" that S.N.W. threatened

individuals during these arguments. Additionally, the "unprovoked shoutings and arguments" and "threatening behavior led to change out his medication."

¶10 WISCONSIN STAT. § 51.20(1)(am) provides in pertinent part that "the requirements of a recent overt act, attempt or threat to act under par. (a)2.a. or b.[], or pattern of recent acts or omissions under par. (a)2.c. or e., … may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." The plain language of the statute includes not only an "overt act" or "attempt," but also a "threat to act" to do "physical harm" or "a pattern of recent acts or omissions" demonstrating a "substantial probability of physical impairment or injury to himself or herself or other individuals." Sec. 51.20(1)(a)2.a., b., c.; (1)(am). We are confident that based on the evidence of fights, arguments, and threats, Musunuru's testimony and report supports a finding "that there is a substantial likelihood" that S.N.W. is dangerous pursuant to § 51.20(1)(a)2. such that S.N.W. "would be a proper subject for commitment if treatment were withdrawn." *See* § 51.20(1)(am); *see also* ***Langlade County v. D.J.W.***, 2020 WI 41, ¶41, 391 Wis. 2d 231, 942 N.W.2d 277 ("Para. (1)(am) … mandates that circuit courts ground their conclusions in the subdivision paragraphs of subd. 2.")[6]; ***Winnebago County v. S.H.***, No. 2019AP2277-FT, slip op. recommended for publication, ¶13 (WI App June 17, 2020) ("It is also true that proof of the ultimate finding of fact under …

---

[6] We understanding that our supreme court clarified that "*going forward* circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d. 231, ¶¶40-41 (emphasis added). The circuit court does not appear to have made such findings; regardless, the decision in this case occurred prior to ***D.J.W.***'s release and S.N.W. does not argue this as a basis for reversal.

§ 51.20(1)(am)—'a substantial likelihood ... that the individual would be a proper subject for commitment if treatment were withdrawn'—necessarily requires proof of a substantial likelihood of dangerousness, as defined under § 51.20(1)(a)2.a.-e.").

¶11 We acknowledge, as the circuit court did, that Musunuru did not provide details about what kind of threats S.N.W. made toward others. On that issue, we agree with the circuit court's evaluation of Musunuru's testimony. The circuit court explained:

> I appreciate the doctor didn't give a lot of detail, but he did review the record. He is, as an expert, allowed to render opinions and testimony in more general categories without having to recite the minutia of details of actual words stated or words said. So when the doctor says that the patient has had fights or arguments, yeah, that's pretty generic, but it's based on the treatment record that he reviewed. He referred to trouble in the Dodge County Jail regarding paranoia and food and poisoning. He did recognize loud arguments at the Berry House, and he did feel that the behavior was threatening. Sure, he couldn't give details, but as an expert, he can give summary conclusions based on facts in the treatment record.

Physicians and mental health professionals are charged, pursuant to WIS. STAT. § 51.20, with evaluating the subject individual and providing a recommendation based on his or her expertise. Where the expert opines, after reviewing an individual's treatment history, that the individual is dangerous and provides a basis for his or her opinion pursuant to the statute and discusses specific behavior the individual engaged in during the past or present, the opinions and assessments of the expert hold great weight.

¶12 This court recently explained in *S.H.*, No. 2019AP2277-FT, ¶13, that "neither the statute nor the applicable case law requires an expert or circuit court to speculate on the precise course of an individual's impending

decompensation by identifying specific future dangerous acts or omissions the individual might theoretically undertake without treatment." We continued by noting that "[d]angerousness in an extension proceeding can and often must be based on the individual's precommitment behavior, coupled with an expert's informed opinions and predictions (provided, of course, that there is a proper foundation for the latter)." *Id.* As we observed, however, "reliance on assumptions concerning a recommitment at some unidentified point in the past, and conclusory opinions parroting the statutory language without actually discussing dangerousness, are insufficient to prove dangerousness in an extension hearing." *Id.*, ¶17; *see also* **Winnebago County v. L.F.-G.**, No. 2019AP2010, unpublished slip op. ¶5 (WI App May 20, 2020) ("An involuntary mental commitment requires proof of a substantial likelihood of dangerousness by clear and convincing evidence, not assumptions or inferences.").[7] In this case, Musunuru discussed specific dangerous behavior (threats, fights, and arguments) "that was directly tied to postcommitment paranoid ideations" (paranoid thoughts that the staff was against him), which "provided the necessary link between past dangerousness and the substantial likelihood of reoccurrence of such behavior absent an extension order." **S.H.**, No. 2019AP2277-FT, ¶17.

     *By the Court.*—Orders affirmed.

     This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[7] We may cite an unpublished decision "for its persuasive value." WIS. STAT. § 809.23(3)(b).