COURT OF APPEALS
DECISION
DATED AND FILED

February 21, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.      **2023AP394**

**STATE OF WISCONSIN**

Cir. Ct. No.  2023CV20

**IN COURT OF APPEALS
DISTRICT III**

PETITIONER,

    PETITIONER-RESPONDENT,

  V.

RANDY L. JOHNSON,

    RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for Barron County:
JAMES C. BABLER, Judge.  *Affirmed.*

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Randy Johnson appeals from an order granting the Petitioner a four-year domestic abuse injunction.  He challenges the denial of his

motion to dismiss the petition and to vacate a temporary restraining order (TRO), as well as the issuance of the injunction.[1]  We affirm.

## BACKGROUND

¶2      According to the petition, after the Petitioner moved out of Johnson's house, Johnson "continuously harassed, verbally abused, and threatened" the Petitioner multiple times over the ensuing seven months.  In one message, which the Petitioner took to the police, Johnson threatened to show up at the Petitioner's residence or place of employment.  In addition to sending the Petitioner messages, texts, and mail after she asked him to leave her alone, Johnson told the Petitioner in reference to another ex-girlfriend that he "shot that bitch, threw her in the lake[.]  She would be dead, I would just do time."  The Petitioner further alleged that she greatly feared Johnson and was always on alert for him when out shopping, at work, or at home.

¶3      In response to the petition, the circuit court issued an ex parte TRO. Johnson moved to dismiss the petition and to vacate the TRO, asserting that the facts alleged in the petition were insufficient to establish grounds for relief. Specifically, Johnson argued that the alleged facts did not establish that he was a current household member of the Petitioner; that he had engaged in any of the six types of domestic abuse specified in WIS. STAT. § 813.12(1)(am) (2021-22);[2] or

---

[1] We note that Johnson did not file a reply brief, which this court may construe as a concession to any arguments raised in the respondent's brief.  We have nonetheless chosen to address the merits of Johnson's appellate issues.

[2] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that he represented a "potential danger posed to the [P]etitioner" under § 813.12(3)(aj) and (4)(aj).

¶4    At a hearing on the motion to dismiss the petition and to vacate the TRO, the circuit court first noted that the domestic abuse statute also applied to an individual with whom the Petitioner had a prior dating relationship, which the Petitioner had alleged by checking a box on the petition. *See* WIS. STAT. § 813.12(1)(am).  The court then observed that Wisconsin is a notice pleading state, and it concluded that the Petitioner's general allegations that Johnson had made threats against her and that she was afraid of him were sufficient to sustain the TRO and survive the motion to dismiss.

¶5    At the bench trial, the Petitioner testified that Johnson had sent her messages stating that he knew where she lived and worked; that he would find her; that people like her "need to be exterminated"; that she "need[ed] to die"; and also questioning whether there was "[a]ny real reason why [he] shouldn't want to beat the shit out of [her]."  The Petitioner also said that Johnson repeatedly called her names such as "fucking cunt," "fucking bitch," and "scum of the earth."

¶6    The Petitioner further testified that she had previously been in a live-in relationship with Johnson for seven years.  During that time, the Petitioner stated Johnson had a history of "attacking" her—including incidents in which he grabbed and dragged her out of the house, pressed his knee to her chest, grabbed her around the neck, and pulled his vehicle in front of hers in traffic as she was trying to leave.

¶7    Johnson took the stand and denied that he had ever physically harmed the Petitioner.  He acknowledged sending the messages in which he told the Petitioner that people like her need to be exterminated and questioning why he

3

should not "beat the shit out of" her. He asserted that the primary reasons he had sent the messages to the Petitioner were to recover money the Petitioner owed him and to arrange the return of his belongings. Johnson said that he had never intended to harm or threaten the Petitioner, only to express his anger at how she had treated him. He noted that he had never made any actual contact with the Petitioner after she moved out.

¶8    Johnson also introduced two exhibits in which he had handwritten the content of about forty texts he claimed the Petitioner had sent him in response to texts he had sent her. These texts ranged from two to eight words, including such phrases as "[l]eave us all alone," "move on," "leave me alone," "[a]ll your messages I never read," "you threaten me," "you threatened me for the last time," and "it has been over 2 months."

¶9    The circuit court found the Petitioner's testimony regarding prior physical abuse to be more credible than Johnson's testimony, and it concluded that the Petitioner's testimony along with Johnson's admission that he asked the Petitioner if there was reason he should not "beat the shit out of" her were sufficient to establish grounds for the injunction. The court entered a four-year injunction. Johnson appeals, challenging the denial of his motion to dismiss the petition and to vacate the TRO and the entry of the domestic abuse injunction.

## DISCUSSION

### I.  Motion to Dismiss the Petition

¶10    When reviewing a motion to dismiss, we accept as true all facts pleaded and reasonable inferences therefrom. *Reetz v. Advocate Aurora Health, Inc.*, 2022 WI App 59, ¶6, 405 Wis. 2d 298, 983 N.W.2d 669. We will

independently determine as a question of law whether those facts state a cognizable claim. *Id.* A claim should be dismissed only if the plaintiff or petitioner "cannot recover under any circumstances." *Id.* (citation omitted).

¶11 A petition for a domestic abuse injunction must allege facts sufficient to show that the respondent engaged in, or based upon prior conduct may engage in, domestic abuse of the petitioner. WIS. STAT. § 813.12(5)(a)3. Domestic abuse is defined to include intentional infliction of physical pain, physical injury or illness; intentional impairment of physical condition; sexual assault; stalking; destruction of property; or threats to do any of those things. Sec. 813.12(1)(am).

¶12 Johnson contends that the allegations in the petition were insufficient to show that he had engaged in any of the six enumerated types of domestic abuse. More specifically, he argues that: (1) the allegation that he "threatened" the Petitioner did not explicitly state that he threatened her with physical pain or injury; and (2) the allegations that he "harassed" the Petitioner and threatened to show up at her residence or place of employment do not meet the definition of stalking because he had not shared a household with the Petitioner for over six months.

¶13 Johnson's argument on the first point fails to take into account reasonable inferences that may be made from the facts alleged in the petition. When taken in conjunction with the Petitioner's asserted fear of Johnson and the alleged statement Johnson had made about another ex-girlfriend, it is reasonable to infer that the threats to which the Petitioner referred may have included threats of physical harm.

¶14 Johnson's argument on the second point is based upon a misreading of the stalking statute. WISCONSIN STAT. § 940.32(2)(a) provides that someone who "engages in a course of conduct directed at a specific person that would cause a reasonable person under the same circumstances to suffer serious emotional distress or to fear bodily injury to or the death of himself or herself or a member of his or her family or household" is guilty of stalking. The statute does not require that the stalker be a member of the victim's household. It merely includes a threat of harm to a member of the victim's household as a mode of committing the offense.

¶15 The allegations that Johnson harassed the Petitioner and threatened to show up at her residence or place of employment were sufficient to show that Johnson had engaged in or threatened to engage in stalking. It follows that the circuit court properly denied the motion to dismiss because the petition alleged sufficient facts to state a claim that Johnson had engaged in domestic abuse.

## II. Motion to Vacate the TRO

¶16 Johnson next argues that the petition failed to provide grounds for the TRO because it did not allege sufficient facts from which the circuit court could conclude that there was "potential danger posed to the petitioner" under WIS. STAT. § 813.12(3)(aj). That statute provides:

> In determining whether to issue a temporary restraining order, the judge or circuit court commissioner shall consider the potential danger posed to the petitioner and the pattern of abusive conduct of the respondent but may not base his or her decision solely on the length of time since the last domestic abuse or the length of time since the relationship ended.

*Id.*

¶17 Johnson does not explain why a challenge to the TRO would not now be moot, given that the TRO was superseded by the domestic abuse injunction and is no longer in effect. *See generally* ***Portage County v. J.W.K.***, 2019 WI 54, ¶11, 386 Wis. 2d 672, 927 N.W.2d 509 (holding an issue is moot when its resolution will have no practical effect on the underlying controversy). In any event, we have already explained why the facts alleged in the petition were sufficient to show that Johnson had engaged in domestic abuse of the Petitioner. The circuit court could reasonably determine that such abuse also posed potential danger to the Petitioner.

### III. Domestic Abuse Injunction

¶18 The determination of whether proper grounds exist for issuing an injunction is a mixed question of fact and law. We will not set aside the factual findings of the circuit court unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2). In addition, because the court is in the best position to observe witness demeanor and to gauge the persuasiveness of testimony, it is the "ultimate arbiter" for credibility determinations when acting as a fact finder, and we will defer to its resolution of discrepancies or disputes in the testimony and its determinations of what weight to give to particular testimony. ***Johnson v. Merta***, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980); *see also* § 805.17(2). We will draw an independent conclusion, however, as to whether the established facts fulfill the legal standards for abuse necessary to support an injunction. ***M.Q. v. Z.Q.***, 152 Wis. 2d 701, 708, 449 N.W.2d 75 (Ct. App. 1989).

¶19 Here, Johnson first asserts that the Petitioner's testimony was not credible because she claimed in the petition: "I asked him in early messages to leave me alone. I have since not responded." Johnson contends this assertion

conflicted with Johnson's texts exhibits and the Petitioner's own acknowledgement at trial that she had sent multiple short responses to messages Johnson sent her. Johnson's argument is unpersuasive.

¶20 First, the circuit court was free to find the Petitioner's testimony credible regarding past physical abuse, even if it did not find her testimony fully credible regarding how often she responded to Johnson's texts. Second, any impeachment value of the discrepancy regarding the Petitioner's responses to Johnson's texts was limited.

¶21 The content of the texts Johnson asserted that the Petitioner sent him was entirely consistent with the Petitioner's assertion that Johnson sent her threatening texts after she asked him to leave her alone. The brevity of the texts was also generally consistent with the Petitioner's assertion that she did not "respond" to Johnson's messages, in the sense that she did not engage in any protracted dialogue with him.

¶22 Johnson next contends that the circuit court failed to demonstrate a "process of reasoning" in reaching its conclusion. As we noted above, however, this court independently determines whether the established facts fulfill the legal standard required to obtain an injunction.

¶23 The incidents in which Johnson grabbed the Petitioner and dragged her out of the house, pressed his knee to her chest, and grabbed her around the neck involved the intentional infliction of physical pain or injury. The texts Johnson sent the Petitioner saying that people like her need to be exterminated and questioning why he should not "beat the shit out of" her involved veiled threats of future infliction of pain or injury and constituted harassment within the meaning of

the stalking statute. Therefore, the evidence provided reasonable grounds to believe that Johnson engaged in, or would engage in, domestic abuse.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.