COURT OF APPEALS
DECISION
DATED AND FILED

May 20, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2019AP2010**

**STATE OF WISCONSIN**

Cir. Ct. No.  **2019ME134**

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF L.F.-G.:

WINNEBAGO COUNTY,

    PETITIONER-RESPONDENT,

  V.

L. F.-G.,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Winnebago County: GARY L. BENDIX, Judge. *Reversed and cause remanded*.

¶1      REILLY, P.J.[1]  "Emily"[2] appeals from an order extending her involuntary commitment for twelve months and an order for involuntary medication and treatment.[3]  Emily argues that Winnebago County failed to prove by clear and convincing evidence that she is dangerous to herself or others.  As the evidence presented at Emily's commitment hearing fails to support extending the commitment, we reverse and remand.

¶2      WISCONSIN STAT. § 51.20 governs involuntary commitment for treatment.  To involuntarily commit a person, the County has the burden to prove by clear and convincing evidence that the person is (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous.  *See* § 51.20(1)(a)1.-2., (13)(e).  The same standards apply to extensions of the commitment, except the County no longer must demonstrate proof of a recent act but may satisfy the showing of dangerousness by demonstrating that "there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."  Sec. 51.20(1)(am); ***Portage County v. J.W.K.***, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509.

¶3      Our supreme court recently explained that "[t]his paragraph recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] The parties refer to the appellant, L.F.-G., by the pseudonym "Emily," and, for convenience, we will as well.

[3] Emily does not challenge or make any specific arguments regarding the order for involuntary medication and treatment.

ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur," calling WIS. STAT. § 51.20(1)(am) an "alternative evidentiary path, reflecting a change in circumstances occasioned by an individual's commitment and treatment." *J.W.K.*, 386 Wis. 2d 672, ¶19. "However, dangerousness remains an element to be proven to support both the initial commitment and any extension." *Id.* "Each extension hearing requires the County to prove the same elements with the same quantum of proof required for the initial commitment." *Id.*, ¶24. "The dangerousness standard is not more or less onerous during an extension proceeding; the constitutional mandate that the County prove an individual is both mentally ill and dangerous by clear and convincing evidence remains unaltered." *Id.* The statute was designed to avoid revolving-door commitments where reoccurring cycles of treatment, lack of treatment, and demonstrations of dangerousness would be required. *See State v. W.R.B.*, 140 Wis. 2d 347, 351, 411 N.W.2d 142 (Ct. App. 1987). Whether the facts in the record satisfy the statutory standard for recommitment is a question of law that this court reviews de novo. *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.

¶4      Dr. Michael Vicente, M.D., was the only witness to testify at Emily's commitment extension hearing.[4]   Vicente testified that he had been treating Emily for three years and that Emily was diagnosed with schizoaffective

---

[4] We recognize that the record also includes a "Report of Examination" written by Dr. Marshall J. Bales, M.D. We note that this report contains evidence pertaining to Emily's condition that was relevant to the issue in this case. However, Bales never testified at the hearing, and this report was not entered into evidence. Accordingly, we do not consider the contents of the report in our decision. We acknowledge that the report was likely read by the court and the parties, but it was never entered into evidence. If Vicente could not offer an opinion as to Emily's dangerousness based on her treatment history, then Bales' report should have been entered into evidence either through his testimony or by stipulation.

disorder, which affects areas of thought, mood, and perception. Vicente further testified that those areas were "grossly" affected and that Emily's "judgment, behavior, and capacity to recognize reality" were impaired. According to Vicente, Emily does not believe she has a mental health issue; therefore, she would not comply with treatment without a commitment order as she "does not believe she needs treatment." As to the specific issue in this case, Vicente testified that if treatment were withdrawn, Emily "would … become a proper subject for commitment" as "[i]n my previous treatment with her, when she was off commitment, she stopped her treatment and became acutely psychotic again."

¶5      We conclude that Vicente's testimony failed to establish that Emily is dangerous and, thus, a proper subject for commitment if treatment is withdrawn pursuant to WIS. STAT. § 51.20(1)(am). The County argues that "[w]e can assume that [Emily's] behavior during the acutely psychotic period of non-treatment was dangerous because she eventually became the subject of an involuntary commitment that required the recommitment hearing at issue." With all due respect, no we cannot. An involuntary mental commitment requires proof of a substantial likelihood of dangerousness by clear and convincing evidence, not assumptions or inferences. As our supreme court explained,

> Each extension hearing requires proof of *current* dangerousness. It is not enough that the individual was at one point a proper subject for commitment. The County must prove the individual "*is* dangerous." The alternate avenue of *showing* dangerousness under [§ 51.20(1)(am)] does not change the elements or quantum of proof required. It merely acknowledges that an individual may still be dangerous despite the absence of recent acts, omissions, or behaviors exhibiting dangerousness outlined in § 51.20(1)(a)2.a.-e.

*J.W.K.*, 386 Wis. 2d 672, ¶24 (citation omitted).

¶6     We also find a recent unpublished, but authored, opinion of this court persuasive in its discussion of this issue. *See* WIS. STAT. RULE 809.23(3)(b). In *Waupaca County v. K.E.K*, No. 2018AP1887, unpublished slip op. ¶¶23-25 (WI App Sept. 26, 2019), this court explained that the County must prove a substantial likelihood that the subject will harm himself or herself or others in the absence of treatment, and we agree that this is the correct reading of the statute. WISCONSIN STAT. § 51.20(1)(am) requires a "showing that there is a substantial likelihood" that the person "would be a proper subject for commitment if treatment were withdrawn," and a person is a proper subject for *commitment* if the County establishes that the person is (1) mentally ill, (2) a proper subject for treatment, and (3) dangerous. *See* § 51.20(1); *see also* **K.E.K.**, No. 2018AP1887, unpublished slip op. ¶25 ("[R]ecommitment requires a finding that, if treatment were withdrawn, there is a substantial probability that the individual would be dangerous under at least one of the five alternative dangerousness standards in the initial commitment test.").

¶7     It was the County's burden to show that Emily is a proper subject for commitment—which is to say that Emily is mentally ill, that she would be a proper subject for treatment, and that she is dangerous—if treatment were withdrawn. What we know is that when Emily "was off commitment, she stopped her treatment and became acutely psychotic again" and that she does not believe she needs treatment. All Vicente's testimony establishes is that Emily is mentally ill and that she would be a proper subject for *treatment*. There is no information pertaining to how her "acutely psychotic" state would impact her behavior such that there is a substantial likelihood that she would be *currently* dangerous, pursuant to WIS. STAT. § 51.20(1)(a)2.a.-e., if treatment was withdrawn. *See* **J.W.K.**, 386 Wis. 2d 672, ¶24. Vicente simply parroted back the language of the

statute without any explanation of why Emily would be dangerous if treatment was withdrawn. Accordingly, the County failed to establish that Emily was a proper subject for commitment by clear and convincing evidence.[5]

*By the Court.*—Orders reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] We recognize that prior to the release of this decision our supreme court released its decision in ***Langlade County v. D.J.W.***, 2020 WI 41, ___ Wis. 2d ___, ___ N.W.2d ___. After ***D.J.W.*** was released, Emily filed a motion for summary reversal with this court on April 30, 2020, seeking reversal of the involuntary recommitment order based on the lack of "specific factual findings" under WIS. STAT. § 51.20(1)(a)2. as required pursuant to ***D.J.W.*** The County filed a response on May 12, 2020, arguing that the holding in ***D.J.W.*** may not be applied to this case. Under the circumstances, we conclude that Emily's motion for summary reversal is moot. The holding in ***D.J.W.*** does not impact our decision in this case. We conclude that the County failed to establish that Emily is dangerous under either the law prior to ***D.J.W.*** or the law under ***D.J.W.***