COURT OF APPEALS
DECISION
DATED AND FILED

June 22, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2014-FT**

**STATE OF WISCONSIN**

Cir. Ct. No. 2019ME9

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE MENTAL COMMITMENT OF J. M. P.:

EAU CLAIRE COUNTY,

    PETITIONER-RESPONDENT,

  V.

J. M. P.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Eau Claire County: EMILY M. LONG, Judge. *Reversed*.

¶1 STARK, P.J.[1] Jordan appeals an order extending his involuntary commitment under WIS. STAT. ch. 51 and an order for involuntary medication and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

treatment.[2]  Jordan contends reversal is warranted because the circuit court failed to "make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment [was] based," as required by *Langlade County v. D.J.W.*, 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277.  Jordan also argues Eau Claire County failed to meet its burden to prove that he is dangerous.

¶2    We agree with Jordan that the circuit court failed to make specific factual findings with respect to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which his recommitment was based, as required by *D.J.W.*  We therefore reverse the order extending Jordan's commitment and the associated order for involuntary medication and treatment.

## BACKGROUND

¶3    Jordan was involuntarily committed under WIS. STAT. ch. 51 on February 14, 2019, for a period of six months.  On August 1, 2019, Jordan's commitment was extended for twelve months.  On June 4, 2020, the County filed a petition seeking another extension of Jordan's commitment.  The circuit court held a hearing on that petition on July 14, 2020, at which two witnesses testified—a psychologist and a social worker.

¶4    Given our resolution of this appeal, we need not delve too deeply into the substance of these witnesses' testimony.  For our purposes, it is sufficient to note that psychologist Brian Stress testified that: (1) Jordan had a history of

---

[2] This is an expedited appeal under WIS. STAT. RULE 809.17.  For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

schizophrenia and polysubstance abuse and suffered from drug-induced psychosis, as well as alcohol, cannabis, and methamphetamine use disorders; (2) Jordan reported hearing voices at least once a week and stated the voices "tell him to hurt people and himself and call him names"; (3) Jordan was dangerous because there was a substantial likelihood, based on his treatment records, that he would be a proper subject for commitment if treatment were withdrawn; (4) Jordan's "insight and judgment" were impaired because of "his alcohol, drug, and mental health difficulties"; (5) Jordan continued to report auditory hallucinations and stated that he did not believe he qualified for a mental health diagnosis of schizophrenia or a psychotic disorder; and (6) Jordan had stated that he would resume using cannabis and alcohol if not in a group home and that he would not take his medications "if left to his own devices." Stress opined that if Jordan stopped taking his medications and resumed using cannabis and alcohol, it was likely that his auditory hallucinations would become more prominent, "[w]hich could result in poor behavioral choices that could result in him participating [in] behaviors that injure or kill himself or others."

¶5 Following the witnesses' testimony and arguments by the parties, the circuit court found that Jordan suffers from a mental disorder—specifically, drug-induced psychosis. Turning to the issue of dangerousness, the court stated:

> I'm a little confused as to the defense argument there has not been a sufficient showing [of dangerousness] given that Dr. Stress testified—and there really doesn't seem to be any dispute of the fact—that [Jordan] has these command voices and the command voices tell him to do bad things. And then [Jordan] apparently voices them outwardly toward other people threatening to harm himself and threatening to harm others, that's clearly a threat to act.
>
> And the fact that he hasn't apparently taken a physical act yet is not really necessary. The fact is he has threat [sic] to harm himself and others and clearly to the extent that others have felt the need to report these threats.

3

> Dr. Stress also talked about some differences between curable and treatable, et cetera. But clearly it was his position that treatment in terms of medication and/or— well, medication was necessary, that a group home was necessary to be able to do it.
>
> And it seems pretty clear that [Jordan] does not wish to take medications unless he's forced to do so. And, in fact, was not taking his medications when he probably should have been and therefore likely ended up where we are today.
>
> So I am finding that the county has met its burden, that the least restrictive placement is in a group home.

¶6 The County then asked the circuit court to find that Jordan "does meet the dangerousness level in [WIS. STAT. ch.] 51 of the—standards of [WIS. STAT. §] 51.20 and the medication order." The court responded, "I thought I made the dangerousness order but just to be clear, I am finding that [Jordan] meets the dangerousness level with those threats." The court then further found, based on Stress's testimony, that Jordan was not competent to refuse medication.

¶7 The circuit court subsequently entered a written order extending Jordan's commitment for twelve months, as well as an order for involuntary medication and treatment. Jordan now appeals both of those orders.[3]

## DISCUSSION

¶8 In order to involuntarily commit an individual under WIS. STAT. ch. 51, the petitioner has the burden to show by clear and convincing evidence that

---

[3] Jordan clarifies in his appellate briefing that he does not separately challenge the order for involuntary medication and treatment. He correctly notes, however, that an involuntary medication and treatment order is only effective during the term of a lawful commitment, *see* WIS. STAT. § 51.61(1)(g)3., and reversal of the commitment order in this case will therefore also result in reversal of the involuntary medication and treatment order.

the individual is: (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to himself or herself or to others. WIS. STAT. § 51.20(1)(a)1.-2. In this case, Jordan does not dispute that the County established the first two of these elements. With respect to the third element, however, he argues that the circuit court did not follow the requirements set forth in *D.J.W.* when finding him dangerous, and that the County did not meet its burden to show that he is dangerous.

¶9 "In an initial commitment proceeding, WIS. STAT. § 51.20(1)(a)2. provides five different means of demonstrating that a person is 'dangerous.'" *D.J.W.*, 391 Wis. 2d 231, ¶30 (citation omitted). Each of those standards requires the petitioner to "identify recent acts or omissions demonstrating that the individual is a danger to himself [or herself] or to others." *Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶17, 386 Wis. 2d 672, 927 N.W.2d 509; *see also* § 51.20(1)(a)2.a.-e.

¶10 In a recommitment proceeding, however, the petitioner is not required to identify "recent" acts or omissions demonstrating dangerousness. Instead, the dangerousness requirement in a recommitment proceeding "may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." WIS. STAT. § 51.20(1)(am). The recommitment standard in § 51.20(1)(am) "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19.

5

¶11     The recommitment standard in WIS. STAT. § 51.20(1)(am) therefore serves as an "alternative evidentiary path, reflecting a change in circumstances occasioned by an individual's commitment and treatment." *J.W.K.*, 386 Wis. 2d 672, ¶19.  Dangerousness, however, "remains an element to be proven to support both the initial commitment and any extension." *Id.*  Moreover, § 51.20(1)(am) "mandates that circuit courts ground their conclusions [regarding dangerousness] in the subdivision paragraphs of subd. 2." *D.J.W.*, 391 Wis. 2d 231, ¶41.  Stated differently, under § 51.20(1)(am), even though the petitioner need not identify recent acts or omissions showing dangerousness, the petitioner must still prove a substantial likelihood that the subject individual would be dangerous under one of the five standards set forth in § 51.20(1)(a)2.a.-e. if treatment were withdrawn.

¶12     To ensure that circuit courts ground their recommitment orders in the five dangerousness standards in WIS. STAT. § 51.20(1)(a)2.a.-e., our supreme court held in *D.J.W.* that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶40.  The court explained that this requirement serves two purposes. *Id.*, ¶42.  First, it provides "clarity and extra protection to patients regarding the underlying basis for a recommitment." *Id.*  The court emphasized the important liberty interest at stake in mental commitment proceedings and stated that requiring circuit courts to make specific factual findings with reference to the applicable subdivision paragraph of § 51.20(1)(a)2. "provides increased protection to patients to ensure that recommitments are based on sufficient evidence." *D.J.W.*, 391 Wis. 2d 231, ¶43.

¶13     Second, the *D.J.W.* court stated that requiring specific factual findings with reference to a particular subdivision paragraph of WIS. STAT.

§ 51.20(1)(a)2. "clarif[ies] issues raised on appeal of recommitment orders and ensure[s] the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence." *D.J.W.*, 391 Wis. 2d 231, ¶44. The court reasoned that requiring such factual findings would avoid the "guesswork" that is often required on appellate review when a circuit court fails to make clear the statutory basis for its determination of dangerousness. *Id.*, ¶45.

¶14 The recommitment hearing at issue in this appeal took place on July 14, 2020, over two months after our supreme court issued its decision in *D.J.W. D.J.W.*'s holding—i.e., that "going forward" circuit courts in recommitment proceedings must make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. upon which recommitment is based—therefore applies to this case. At the close of the recommitment hearing, Jordan's attorney expressly noted that *D.J.W.* required the circuit court to make specific factual findings with respect to the subdivision paragraph of § 51.20(1)(a)2. upon which Jordan's recommitment was based. The court did not, however, comply with that requirement.

¶15 Instead, the circuit court merely found that: (1) Jordan "has these command voices and the command voices tell him to do bad things. And then [Jordan] apparently voices them outwardly toward other people threatening to harm himself and threatening to harm others, that's clearly a threat to act"; (2) Jordan "has threat [sic] to harm himself and others and clearly to the extent that others have felt the need to report these threats"; and (3) Jordan "does not wish to take medications unless he's forced to do so," and his refusal to take medication "likely ended up where we are today." When the County subsequently asked the court to clarify the basis for its decision, the court merely stated, "I am finding that [Jordan] meets the dangerousness level with those threats."

7

¶16     On this record, we conclude the circuit court failed to comply with its obligation under *D.J.W.* to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. upon which Jordan's recommitment was based.  The County, for its part, does not argue that the court made the specific factual findings required by *D.J.W.*  Instead, the County argues *D.J.W.*'s requirement of specific factual findings does not apply in this case because the evidence at the recommitment hearing established that Jordan was dangerous under multiple subdivision paragraphs of § 51.20(1)(a)2.  The County cites footnote 9 of the *D.J.W.* opinion, in which our supreme court stated: "We recognize that there may be cases where a person satisfies the criteria contained in several statutory subdivision paragraphs.  In such a case, we encourage circuit courts to state each subdivision paragraph that is fulfilled."  *D.J.W.*, 391 Wis. 2d 231, ¶45 n.9.  Based on footnote 9, the County argues that in a case where the subject individual is found to be dangerous under multiple subdivision paragraphs of § 51.20(1)(a)2., the circuit court is merely encouraged, but not required, to articulate the applicable subdivision paragraphs.

¶17     We conclude that the County's argument in this regard is meritless, as it fails to read footnote 9 of *D.J.W.* in context with the remainder of the court's opinion.  The *D.J.W.* court expressly stated that, going forward, courts in recommitment proceedings "are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based."  *D.J.W.*, 391 Wis. 2d 231, ¶40.  Thereafter, the court repeatedly referred to that holding as a "requirement," or as something that circuit courts are now required to do.  *Id.*, ¶¶41, 43-44.  Finally, the court explained that the absence of specific factual findings with reference to a subdivision paragraph of § 51.20(1)(a)2. requires a reviewing court to engage in "guesswork" on appeal.

*D.J.W.*, 391 Wis. 2d 231, ¶¶44-45. The court then stated, "In the future, such guesswork will be avoided by our newly instituted requirement for specific factual findings with reference to a subdivision paragraph of § 51.20(1)(a)2." *D.J.W.*, 391 Wis. 2d 231, ¶45. Footnote 9, on which the County relies, appears immediately after that sentence. *See id.*, ¶45 & n.9.

¶18 Given this context, it is clear that when *D.J.W.* stated circuit courts "are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based," *D.J.W.*, 391 Wis. 2d 231, ¶40, it was imposing a requirement that courts make such findings, not merely encouraging them to do so. Footnote 9 is not inconsistent with that requirement, nor does it limit that requirement to cases where the subject individual is found to be dangerous under only one subdivision paragraph of § 51.20(1)(a)2. Instead, footnote 9 merely clarifies that when a circuit court finds a subject individual to be dangerous under multiple subdivision paragraphs, the court is encouraged to enumerate each subdivision paragraph that applies. That guidance does not obviate *D.J.W.*'s previously stated requirement that the court make specific factual findings with reference to at least one applicable subdivision paragraph. Stated differently, *D.J.W.* holds that when a circuit court in recommitment proceedings concludes that a subject individual is dangerous under more than one subdivision paragraph of § 51.20(1)(a)2., the court is required to make specific factual findings with respect to at least one applicable subdivision paragraph, but it is encouraged to go further and enumerate each subdivision paragraph under which it finds the individual to be dangerous.

¶19 Having concluded that the circuit court failed to comply with *D.J.W.*, we must determine the proper remedy for the court's noncompliance. In his brief-in-chief, Jordan asserted that because the court failed to comply with

*D.J.W.*, the recommitment order and associated involuntary medication order should be reversed. In response, the County argued, as discussed above, that the court was not required to comply with *D.J.W.* In the alternative, however, the County asked that we remand this matter to the circuit court so that it could make the specific factual findings required by *D.J.W.* In his reply brief, Jordan did not argue that a remand for such factual findings would be inappropriate.

¶20 On May 25, 2021, we released an opinion in this case in which we agreed with the County that it was appropriate to remand this matter for the circuit court to make the factual findings required by *D.J.W.* Jordan subsequently moved for reconsideration, however, arguing for several reasons that we should instead reverse the commitment and involuntary medication orders outright. We ordered the County to respond to Jordan's reconsideration motion by June 14, 2021, but the County failed to file a response.

¶21 In light of the arguments raised in Jordan's motion—and the County's failure to respond to those arguments—we now conclude reversal is the appropriate remedy in this case. Jordan correctly notes that a circuit court "must hold a hearing on [a] petition for extension before the previous order expires or it loses competency to extend the commitment." *See J.W.K.*, 386 Wis. 2d 672, ¶20. Jordan's prior commitment order expired on August 3, 2020. Although the circuit court held a hearing on the County's petition to extend Jordan's commitment before that date, the court failed to enter a valid order extending Jordan's commitment before his prior commitment order expired. We therefore agree with Jordan that when the prior commitment order expired, the court lost competency to conduct further proceedings on the County's petition to extend Jordan's commitment. Thus, if we were to remand for the court to make the specific factual findings required by *D.J.W.*, the court would lack the competency to do so.

¶22 Moreover, as Jordan correctly observes, *D.J.W.*'s requirement that circuit courts make specific factual findings regarding the statutory basis for recommitment is intended to provide "clarity" and "extra protection" to committed individuals. *See D.J.W.*, 391 Wis. 2d 231, ¶42. We agree with Jordan that if a petitioner and court "can seek to remedy a lack-of-findings violation ten months after the order on appeal has been entered[,] then this clarity and extra protection come[] far too late to be meaningful."

¶23 We also agree with Jordan that because the orders at issue in this appeal will expire on August 3, 2021, a remand for the circuit court to make the factual findings required by *D.J.W.* would likely result in Jordan being deprived of his right to a meaningful appeal. Jordan notes that if we remanded this matter to the circuit court and he disagreed with the court's findings on remand, there would be no realistic possibility that he could return to this court and obtain a decision regarding the validity of the circuit court's decision before the relevant orders expired. An appeal from an expired commitment order is moot, unless the appellant can show that the order gives rise to collateral consequences that persist even after its expiration. *See Marathon Cnty. v. D.K.*, 2020 WI 8, ¶¶22-25, 390 Wis. 2d 50, 937 N.W.2d 901.

¶24 For the foregoing reasons, we agree with Jordan that outright reversal of his commitment and involuntary medication orders is the appropriate remedy in this case, rather than reversal with a remand for further proceedings. We therefore reverse outright the circuit court's July 14, 2020 orders extending

Jordan's commitment and subjecting him to involuntary medication and treatment.[4]

> *By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[4] Because we reverse the circuit court's July 14, 2020 orders outright on the grounds that the court failed to comply with its obligations under *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, we need not address Jordan's alternative argument that the County failed to meet its burden to prove that he was dangerous. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).