# 2022 WI APP 36

## COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:        2020AP2032

Complete Title of Case:

IN THE MATTER OF THE MENTAL COMMITMENT OF C. J. A.:

OUTAGAMIE COUNTY,

      PETITIONER-RESPONDENT,

    V.

C. J. A.,

      RESPONDENT-APPELLANT.

| | |
|---|---|
| Opinion Filed: | June 1, 2022 |
| Submitted on Briefs: | January 18, 2022 |
| Oral Argument: | |

| | |
|---|---|
| JUDGES: | Stark. P.J., Hruz and Dugan, JJ. |
| Concurred: | |
| Dissented: | |

| | |
|---|---|
| Appellant ATTORNEYS: | On behalf of the respondent-appellant, the cause was submitted on the briefs of *Megan Sanders-Drazen*, assistant state public defender of Madison. |
| Respondent ATTORNEYS: | On behalf of the petitioner-respondent, the cause was submitted on the brief of *Dawn T. Shaha,* assistant corporation counsel, Appleton. |

COURT OF APPEALS
DECISION
DATED AND FILED

June 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2032**

STATE OF WISCONSIN

Cir. Ct. No. 2016ME157

IN COURT OF APPEALS

IN THE MATTER OF THE MENTAL COMMITMENT OF C. J. A.:

OUTAGAMIE COUNTY,

    PETITIONER-RESPONDENT,

 V.

C. J. A.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Outagamie County: TIMOTHY A. HINKFUSS, Judge. *Reversed.*

Before Stark, P.J., Hruz and Dugan, JJ.

¶1 STARK, P.J. Catherine[1] appeals from an order extending her involuntary commitment and an order for involuntary medication and treatment, both entered pursuant to WIS. STAT. ch. 51 (2019-20).[2] Catherine argues that the special verdict presented to the jury did not fairly present the question of whether she was currently dangerous. Catherine further argues that her appeal is not moot because exceptions to the doctrine of mootness apply.[3]

¶2 We elect to address the issue Catherine raises concerning the form of the special verdict because it meets several exceptions to the mootness doctrine, including that it is likely to recur, should be decided to avoid uncertainty, and is almost certain to evade review. We conclude that the circuit court misstated the statutory test when it added language to the special verdict question concerning dangerousness. The addition resulted in an inquiry that did not properly reflect the focus of a WIS. STAT. ch. 51 recommitment proceeding: i.e., whether the individual is currently dangerous. Because the orders on appeal have expired, the court no longer has competency to correct this error by conducting a new trial using an appropriate form of the special verdict question. Accordingly, we reverse.[4]

---

[1] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

[2] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[3] This opinion was first released on April 12, 2022. Subsequently, Catherine moved this court to reconsider its order reversing in part and remanding for a further hearing. After hearing from both parties, we granted Catherine's motion and withdrew our prior opinion.

[4] Catherine also argues that she was denied due process because she was not given particularized notice as to which standards under WIS. STAT. § 51.20(1)(a)2. the Outagamie County Department of Health and Human Services intended to prove at trial in support of its petition to extend her commitment.

## BACKGROUND

¶3    Catherine was first committed under WIS. STAT. ch. 51 in 2016 after her paranoia, mania, and delusions stemming from her schizoaffective disorder caused her family to fear for their safety. In addition, Catherine was found to be dangerous as a result of threats she had made toward persons in the legal system.

¶4    As relevant to this appeal, an extension of Catherine's commitment was set to expire on May 8, 2020. On March 4, 2020, the Outagamie County Department of Health and Human Services ("the County") petitioned to extend Catherine's commitment for an additional year. The petition was supported by a social worker's letter explaining, in part, that Catherine was in outpatient treatment for schizophrenia and discussing the nature of that treatment. The letter also stated that Catherine lacked insight into her mental illness and that "it is believed" she would "decompensate" and "become a proper subject for a [WIS. STAT. ch. 51] commitment" if she were not recommitted. Catherine, represented by counsel, requested a jury trial, and the single-day trial took place on August 18, 2020.[5]

¶5    At the close of evidence, the circuit court held a jury instruction and verdict conference during which it informed the parties that it had added language to question two of the special verdict. The original proposed special verdict question was taken from the form recommended in WIS JI—CIVIL 7050 (2020), the standard jury instruction at the time, and read: "[I]s the subject dangerous to herself

---

Ultimately, we reverse the orders on appeal on the issue of the verdict question, without ordering further proceedings. As this issue is dispositive, we need not address the issue of notice. *See* **Turner v. Taylor**, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (court of appeals need not address all issues raised by the parties if one is dispositive).

[5] Catherine's commitment expired on May 8, 2020, but both parties stipulated to delaying her jury trial until August, 18, 2020, as a result of the COVID-19 pandemic.

or to others?" The court changed the special verdict question, adding the modifier "if not recommitted" to the recommended verdict question. Accordingly, the final form of question two of the special verdict submitted to the jury read: "Is [Catherine] dangerous to herself or to others if not recommitted?" The County approved this language, but Catherine objected, claiming that the additional language misstated the standard and failed to convey the primary question: whether Catherine was currently dangerous. She argued that while the jury instructions properly described the statutory dangerousness standards, the special verdict did not and, therefore, was incorrect.

¶6 The circuit court overruled Catherine's objection, noting, "I think this is the first time in 13 years I've ever deviated from pattern jury instructions. But that pattern jury instruction was really aimed at a commitment as opposed to a recommitment. To me, [that] makes all the difference." The court also quoted language from the Wisconsin Judicial Benchbooks, stating:

> If there is a substantial likelihood based on the subject's individual treatment record that the individual would be a proper subject for commitment if treatment were withdrawn, then—and I stress this—the subject is considered dangerous.
>
> So if [she's] not—if she's not recommitted, the [C]ounty's position is she's dangerous. And that's what the case law holds. And that's what that decision holds—held. And that's—that's in the jury instructions.

*See* WISCONSIN JUDICIAL BENCHBOOKS: PROBATE, GUARDIANSHIP, AND MENTAL HEALTH, MH 1-42 (2020). The court read the instructions and modified special verdict question to the jury. The jury answered "yes" to all three questions on the special verdict—i.e., whether Catherine was mentally ill; whether she was dangerous to herself or others if not recommitted; and whether she was a proper subject for treatment. The court therefore entered an order extending Catherine's

involuntary commitment and an order for involuntary medication and treatment during the recommitment term. Catherine now appeals.

## DISCUSSION

### I. Mootness

¶7 The recommitment order at issue in this appeal expired on August 18, 2021. As a result, we would ordinarily decline to consider the special verdict issue before us as moot. "An issue is moot when its resolution will have no practical effect on the underlying controversy." *State ex rel. Olson v. Litscher*, 2000 WI App 61, ¶3, 233 Wis. 2d 685, 608 N.W.2d 425. Moot appeals are generally dismissed, but courts have discretion to decide them under "exceptional or compelling circumstances." *City of Racine v. J-T Enters. of Am., Inc.*, 64 Wis. 2d 691, 702, 221 N.W.2d 869 (1974).

¶8 The parties ask us to consider the issue on appeal because it fits into multiple exceptions to the doctrine of mootness. This court may elect to address a moot issue if: (1) the issue is of great public importance; (2) the constitutionality of a statute is involved; (3) the issue arises often, making a definitive decision necessary to guide circuit courts; (4) the issue is likely to arise again and needs to be resolved to avoid uncertainty; or (5) the issue is "likely of repetition and evades review." *See Marathon Cnty. v. D.K.*, 2020 WI 8, ¶19, 390 Wis. 2d 50, 937 N.W.2d 901.

¶9 We agree with both parties that the proper form of the special verdict question fits into several established exceptions to the mootness doctrine. The proper form of the special verdict question is an issue that will likely recur in future recommitment trials, and therefore we should resolve the issue to prevent

5

uncertainty.[6]  Further, this issue is of great public importance because the question of dangerousness is the cornerstone of the jury's analysis in a recommitment hearing.  Therefore, that analysis directly impacts whether a subject individual's liberty interest will be affected by an extension of his or her commitment.  This issue is also likely to evade review because commitments last for relatively short periods of time and the appellate process can be lengthy.  Accordingly, we elect to decide the issue on its merits.

## II.  Special Verdict

¶10     Catherine argues that when the circuit court added the language "if not recommitted" to the dangerousness question on the special verdict form, it improperly changed the question of whether Catherine was *currently* dangerous to whether she would *become* dangerous if not recommitted.  This, Catherine argues, is an error of "constitutional magnitude."

¶11     "[T]he content of the special verdict remains within the discretion of the circuit court[.]" *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 22, ¶12, 308 Wis. 2d 103, 746 N.W.2d 762.  "[T]his court will not interfere with the special verdict submitted, so long as all material issues of fact are covered by appropriate questions, and so long as the form correctly and adequately covers the law that applies to the case." *Id.* (citations omitted).  Whether a special verdict reflects an accurate statement of the law is a question of law that we review de novo. *City of Milwaukee v. NL Indus.*, 2008 WI App 181, ¶83, 315 Wis. 2d 443, 762 N.W.2d

---

[6] The Wisconsin Supreme Court recently mandated that dangerousness findings in WIS. STAT. ch. 51 recommitment proceedings be made with particularity and with reference to the particular subsection(s) of WIS. STAT. § 51.20(1)(a)2. under which they are made. *Langlade Cnty. v. D.J.W.*, 2020 WI 41, ¶¶40, 42, 391 Wis. 2d 231, 942 N.W.2d 277.  This new case law has not yet been addressed in the context of a verdict question at trial, and thus it contributes to the uncertainty that prompts us to address this issue, even though the issue is moot.

757. We consider special verdicts in tandem with the associated jury instructions. ***Z.E. v. State***, 163 Wis. 2d 270, 276, 471 N.W.2d 519 (Ct. App. 1991).

¶12 We agree with Catherine that the special verdict question regarding dangerousness was confusing and failed to ask the jury to determine whether Catherine was currently dangerous. In a WIS. STAT. ch. 51 proceeding, a petitioner has the burden to prove by clear and convincing evidence that a subject individual is mentally ill, a proper subject for treatment, and dangerous. *See* WIS. STAT. § 51.20(1)(a), (13)(e). A petitioner may prove that a person is dangerous and warrants commitment under any of the five standards set forth in § 51.20(1)(a)2.a.-e. or, in the case of a recommitment, under those five standards in combination with § 51.20(1)(am). ***Portage Cnty. v. J.W.K.***, 2019 WI 54, ¶18, 386 Wis. 2d 672, 927 N.W.2d 509.

¶13 Importantly, in a recommitment proceeding, the petitioner has the burden of proving that the subject individual is *currently* dangerous under WIS. STAT. § 51.20(1)(a)2. *See* ***Langlade Cnty. v. D.J.W.***, 2020 WI 41, ¶34, 391 Wis. 2d 231, 942 N.W.2d 277. Under § 51.20(1)(am), if the subject individual is under a commitment "immediately prior" to the extension proceedings, then the petitioner may, as an alternative to the options outlined in § 51.20(1)(a)2.a.-e., prove dangerousness by showing "a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." Sec. 51.20(1)(am); *see also* ***J.W.K.***, 386 Wis. 2d 672, ¶19. In essence, this provision removes the requirement that the petitioner show recent acts or omissions in order to establish dangerousness in a recommitment proceeding, which can be difficult to show for a person whose symptoms are being effectively managed by his or her medication and treatment. *See* ***J.W.K.***, 386 Wis. 2d 672, ¶19.

¶14 While WIS. STAT. § 51.20(1)(am) may alter the type of evidence required, "[t]he alternate avenue of *showing* dangerousness … does not change the elements or quantum of proof required. It merely acknowledges that an individual may still be dangerous despite the absence of recent acts, omissions, or behaviors exhibiting dangerousness." *J.W.K.*, 386 Wis. 2d 672, ¶24. Therefore, under any of the five base standards in conjunction with § 51.20(1)(am), the petitioner is still required to prove that the person is *currently* dangerous, despite the fact that the person's supervision and treatment have been effective such that no recent dangerous acts have occurred. *J.W.K.*, 386 Wis. 2d 672, ¶24.

¶15 The unmodified verdict question, as taken from the standard jury instruction at the time of trial—i.e., "Is the subject dangerous to herself or to others?"—asks whether the subject individual is currently dangerous. The circuit court's addition of the language "if not recommitted" plainly modified the question by directing the jury to consider future events—i.e., whether Catherine would become dangerous in the future if she were not recommitted. We agree with Catherine that this language gave the jury conflicting and confusing information about whether it was supposed to consider Catherine's present status or conduct a forward-looking analysis, the latter of which could be based on any number of considerations divorced from the statutory focus on current dangerousness. The jury should only have determined if Catherine was currently dangerous.

¶16 The statutory distinction between basing a commitment on an individual's current dangerousness rather than a possibility that the individual might become dangerous in the future is one grounded in constitutional principles. The United States Supreme Court has recognized that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). It has further held that

a commitment cannot continue after the constitutional basis for it ceases to exist. Any findings of mental illness and dangerousness must therefore be current, not retrospective. *See Foucha v. Louisiana*, 504 U.S. 71, 77-78 (1992). By that same token, a commitment cannot be valid if it occurs *before* the constitutional basis for it exists. If an individual is not yet dangerous, then the individual fits into the well-established principle that "there is still no constitutional basis for confining … persons involuntarily if they are dangerous to no one." *O'Connor v. Donaldson*, 422 U.S. 563, 575 (1975).

¶17     The Wisconsin statutory scheme in WIS. STAT. § 51.20 reflects these constitutional principles. The recommitment analysis narrowly assesses current dangerousness based on recent acts or specific instances of past dangerous behavior. The Supreme Court has recognized previous acts of violent behavior as being "an important indicator of future violent tendencies." *See Heller v. Doe*, 509 U.S. 312, 323 (1993); *see also Kansas v. Hendricks*, 521 U.S. 346, 357 (1997). This statutory scheme prevents an individual from losing his or her liberty based on some dangerous event that might happen, or even is likely to happen, but for which there is no basis in concrete acts.

¶18     Although we consider special verdict questions in conjunction with the jury instructions, doing so does not remedy the defect in the special verdict question in this case. *See Z.E.*, 163 Wis. 2d at 276. The jury instructions listed the dangerousness standards under WIS. STAT. § 51.20(1)(a)2., using language describing current dangerousness. However, because the special verdict question asked the jury to assess future dangerousness—an analysis that is not part of the standards under § 51.20(1)(a)2.—the jury instructions only served to confuse, rather than clarify, the ultimate question for the jury.

¶19    The County argues that the added language comports with WIS. STAT. § 51.20(1)(am), which is a future-looking inquiry in the sense that it asks the jury to consider whether there is a substantial likelihood that a person would be a proper subject for commitment if treatment were withdrawn.[7]  The County fails to discern, however, that the question of whether there is a "substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn" under § 51.20(1)(am) is a very different question from the language at issue in the circuit court's modified special verdict question, which asked whether Catherine would be dangerous to herself or to others "if not recommitted."

¶20    Although WIS. STAT. § 51.20(1)(am) asks whether the subject individual would be a "proper subject for commitment if treatment were withdrawn," the overarching question under § 51.20(1)(am) is still whether the person is *currently* dangerous.  The circuit court's modified language fails to reflect this important nuance.  The modified language instead diverts from the analysis under para. (am), which addresses persons who have not recently committed dangerous acts because they are currently being medicated, and intentionally focuses on those individuals' specific past actions and treatment records as predictors of whether they would become proper subjects for commitment if treatment were withdrawn.  Without the narrow focus of para. (am) on specific past treatment history and concrete dangerous acts, a jury could decide that Catherine would be dangerous if not recommitted for any number of improper reasons that are not a part of the analysis under § 51.20, including the jury's perception of her

---

[7] The County also seems to assert that Catherine argues the controversy in this case was not fully tried.  Catherine does not, however, make that contention in her brief-in-chief, and she explicitly rejects the notion that she does so in her reply brief.  Accordingly, we decline to address the County's arguments on that issue.

disorder generally; behavioral history that was not dangerous or exhibited by specific acts; or speculation regarding her character alone. The circuit court's modification opens the door too widely to any number of considerations divorced from the proper statutory analysis. In addition, § 51.20(1)(am) asks the jury to determine whether there is a "substantial likelihood" that the person would become a proper subject for commitment if treatment were withdrawn. The special verdict language at issue here removed that key modifying language, further distorting the proper dangerousness analysis.

¶21    We reject the County's assertion that we can infer the jury understood the special verdict question simply because it did not submit any questions to the circuit court during its deliberations. The special verdict question was misleading and was an incorrect statement of the law, even if the jury was unaware that it was performing a misguided analysis.

¶22    In addition, the standard presented in the modified special verdict question makes it difficult for a reviewing court to determine the statutory basis for the jury's decision. Requiring the jury to determine the specific basis for a committee's current dangerousness comports with the specificity requirements in *D.J.W.*—which require that the exact standard supporting a recommitment under WIS. STAT. § 51.20(1)(a)2. be clear. *D.J.W.*, 391 Wis. 2d 231, ¶40.

¶23    We note that the Wisconsin Civil Jury Instruction Committee recently created a recommended special verdict form for recommitment cases, set forth in WIS JI—CIVIL 7050A (2021). The new verdict question asks, "Is (respondent) dangerous to [(himself) (herself)] or to others?" If the jury answers that question "yes," the verdict form then lists the standards under WIS. STAT. § 51.20(1)(a)2.a.-e., allowing the jury to select one or more of those standards on its

own or in combination with § 51.20(1)(am) as the basis for its determination of dangerousness. We recommend that in future jury trials involving recommitment proceedings, circuit courts use a special verdict question with this level of specificity so that the jury conducts the proper statutory analysis and may clearly specify the basis for its determination of current dangerousness, in order to avoid confusion.

¶24    For all of the foregoing reasons, we conclude that the special verdict question regarding dangerousness improperly stated the legal standard at issue, was misleading, and was, therefore, inherently prejudicial to Catherine. Because the recommitment order on appeal has expired, the circuit court no longer has competency to conduct a new trial using an appropriate form of the special verdict question.[8] *See Waukesha Cnty. v. E.J.W.*, 2021 WI 85, ¶40 n.10, 399 Wis. 2d 471, 966 N.W.2d 590. Accordingly, we reverse.

*By the Court.*—Orders reversed.

---

[8] Catherine is currently subject to a more recent recommitment order. The reversal of the orders at issue in this appeal does not affect the validity of any of Catherine's separate, subsequent recommitments. *See Portage Cnty. v. J.W.K.*, 2019 WI 54, ¶21, 386 Wis. 2d 672, 927 N.W.2d 509 (determining that the reversal of a recommitment order "does not retroactively deprive the circuit court that issued a subsequent commitment order of competency").