**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 8, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.  2022AP623**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018ME94

**IN COURT OF APPEALS
DISTRICT III**

IN THE MATTER OF THE MENTAL COMMITMENT OF T. J. M.:

MARATHON COUNTY,

   PETITIONER-RESPONDENT,

 V.

T. J. M.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Marathon County: SUZANNE C. O'NEILL, Judge. *Reversed*.

¶1  STARK, P.J.[1]  Trevor[2] appeals two orders entered under WIS. STAT. ch. 51, one recommitting him for twelve months and another allowing for the

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

involuntary administration of medication and treatment. Trevor argues that the orders should be reversed because the circuit court failed to make specific factual findings regarding his dangerousness under a subdivision paragraph of § 51.20(1)(a)2., as required by *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277. Additionally, Trevor argues that Marathon County failed to present sufficient evidence demonstrating that he is dangerous. We assume without deciding that the court concluded that Trevor was dangerous under § 51.20(1)(a)2.a. and c., and (1)(am). We conclude, however, that the County failed to present sufficient evidence that Trevor is currently dangerous. We therefore reverse the orders.[3]

## BACKGROUND

¶2 On March 11, 2018, Trevor sought admission to a hospital due to symptoms of narcolepsy. Once admitted, Trevor was found to have hyponatremia, a condition that occurs from drinking water excessively and causes low sodium levels. As a result of this condition, Trevor experienced psychotic issues and hallucinations. Trevor was placed on emergency detention under WIS. STAT. § 51.15(1) due to a concern about his ability to care for himself.

¶3 On March 23, 2018, the circuit court committed Trevor for six months pursuant to WIS. STAT. § 51.20 and issued an order for involuntary

---

[2] For ease of reading, we refer to the appellant in this confidential appeal using a pseudonym, rather than his initials.

[3] An order allowing for involuntary medication and treatment requires the existence of a valid commitment order. *See* WIS. STAT. § 51.61(1)(g)3. Trevor raises no issue with his involuntary medication order, but if the recommitment order is reversed, reversal of the associated involuntary medication order is also required.

medication and treatment during the period of his commitment. Since his initial commitment, Trevor's commitment has been extended four times for twelve months each.

¶4    Trevor contested the County's most recent petition to extend his commitment, and a hearing was held on that petition in October 2021. Doctor John Thomas Coates, Dr. Nicholas Starr, and Trevor testified at the hearing. Coates is a licensed physician who was scheduled to meet with Trevor to complete an evaluation in preparation for the hearing. Due to transportation issues, Trevor failed to attend the meeting, and Coates instead reviewed Trevor's treatment records. Based upon his record review, Coates testified about Trevor's past medical history, stating that Trevor has "an established history of mental illness … has had problems with mood instability in the past … [and] has also experienced auditory hallucinations." Coates further stated that Trevor had "a history of treatment non-compliance." Coates mentioned Trevor's prior hospitalization in 2018, explaining that it was "on account of life-threatening hyponatremia which is low sodium level[s] and that was due to psychogenic polydipsia" which is "basically [from] just drinking too much water." However, Coates testified that to his knowledge, Trevor had not recently required hospitalization for low sodium.

¶5    Doctor Coates testified that Trevor is diagnosed with schizophrenia, a mental illness that is treated primarily by medication. Coates opined that there was a substantial likelihood Trevor would become dangerous to himself if treatment were withdrawn. In support of this opinion, Coates testified that the "diagnosis of schizophrenia carries with it an increased risk of death from an unnatural cause. That could be suicide. That could be some sort of accident. That could also include drinking too much water and becoming hyponatremic."

¶6     In addition, Dr. Coates testified that Trevor's judgment was "just very poor" and "without treatment [Trevor] is not going to properly take care of himself and there will be all sorts of possible dangers, including suicide." Coates also opined that Trevor is not competent to refuse medication and treatment "due to his lack of judgment and insight."

¶7     Finally, Dr. Coates testified that the last time he interviewed Trevor was by telephone in September 2020. At that time Trevor "specifically denied having any suicidal or homicidal ideation but … did admit … to attempting suicide in the past." Coates did not provide any specific information as to when this attempt occurred or any further details about the past incident.

¶8     Doctor Starr is a psychologist who prepared an evaluation report for Trevor's recommitment hearing. Trevor was also unable to meet with Starr immediately prior to the hearing, but Starr testified that he had met with Trevor at an unspecified time in the past.

¶9     Doctor Starr likewise opined that Trevor suffers from schizophrenia, a mental illness that Starr deemed to be treatable. Based upon his review of Trevor's treatment records, Starr testified he was unaware of Trevor displaying any psychotic behaviors. Despite that omission, Starr testified he believed Trevor "would present a danger both to himself and to others" if treatment were withdrawn. Starr explained that, in the past, Trevor "has made suicide attempts and threats to kill other people, including his treatment providers." Starr testified that he believed those behaviors would increase and that Trevor would act on those behaviors if treatment were withdrawn. According to Starr, Trevor is "non-compliant, using marijuana, [and] not taking his medications consistently." Starr did not provide details of the effects of Trevor's inconsistent medication

regimen, but he stated it was his understanding that Trevor "is currently psychologically hospitalized."[4]

¶10    Trevor testified at the hearing that he did not believe he was a danger to himself or others and that he was willingly taking his medications. Trevor further stated that he was willing to follow through with any voluntary treatment plan. When asked if he was currently in the hospital, Trevor stated he had been at the Tomah VA Hospital for a week. Trevor explained he was brought to the hospital because "somebody said that I was making threats to myself to [the] veteran's hotline." Trevor denied that he had made such threats or any threats of harm to others. He further denied refusing to take his medication or acting aggressively toward any treatment provider.

¶11    The circuit court concluded Trevor was a proper subject for commitment. It found that Trevor had schizophrenia, that his "symptoms can be controlled, and that his illness can be managed through treatment." Referencing Dr. Coates' testimony, the court found that Trevor suffers "such impaired judgment that if treatment were withdrawn he would present as a substantial probability of physical impairment or injury to himself or to others." Relying on the testimony of both doctors, the court then stated that Trevor "at this point in time is non-compliant with medications, … has a history of substance

---

[4] Doctor Starr and Trevor both testified that Trevor had recently been admitted to the Tomah VA Hospital, although the circuit court sustained Trevor's counsel's hearsay objection to Starr's testimony regarding the basis for Trevor's hospitalization. No medical records were admitted regarding the hospitalization. The County called no other witnesses on this issue, and the court did not reference the hospital admission in its findings. We therefore do not rely on this evidence in our analysis.

abuse, … does not have insight into his mental health condition, … has displayed aggressive behaviors towards others, and has had suicidal ideations in the past."

¶12 The circuit court extended Trevor's commitment for a period of twelve months based on Trevor's "diagnosis, [Trevor's] impaired judgment that has been offered through the testimony, … [and Trevor's] psychosis that has been testified to" at the hearing. The court noted "that some of the dangerous conduct that has been testified to here today is somewhat dated," but it found the doctors' testimony credible and further found "that if treatment were withdrawn, [Trevor] would be at risk of returning to those dangerous behaviors." The court found that Trevor was not competent to refuse medication "because he is incapable of applying an understanding of the advantages, disadvantages, and alternatives to his condition." As a result, the court also ordered an extension of Trevor's involuntary medication order.

## DISCUSSION

¶13 A recommitment order under WIS. STAT. ch. 51 requires the petitioner to prove two elements "by clear and convincing evidence: (1) the individual is mentally ill and a proper subject for treatment, and (2) the individual is dangerous." *Portage County v. J.W.K.*, 2019 WI 54, ¶18, 386 Wis. 2d 672, 927 N.W.2d 509; *see also* WIS. STAT. § 51.20(1)(a)1.-2. "[S]imilar to an initial commitment, a recommitment requires a showing of mental illness and *current* dangerousness." *Waupaca County v. K.E.K.*, 2021 WI 9, ¶3, 395 Wis. 2d 460, 954 N.W.2d 366 (emphasis added). "A recommitment petition must 'establish the same elements with the same quantum of proof' as an initial commitment." *Id.* (citing *Waukesha County v. J.W.J.*, 2017 WI 57, ¶20, 375 Wis. 2d 542, 895 N.W.2d 783). Here, Trevor argues that the circuit court failed to find him

currently dangerous under a specific subdivision paragraph of WIS. STAT. § 51.20(1)(a)2., and he further asserts that the County failed to provide sufficient evidence to support any finding of dangerousness under that statute.

¶14    There are five separate standards under which a person can be found dangerous.  WIS. STAT. § 51.20(1)(a)2.a.-e.  Each standard requires the petitioner to prove "recent acts or omissions."  *See id.*  Section 51.20(1)(am) provides an alternate path for a petitioner to prove dangerousness in a recommitment proceeding "by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."  This alternate evidentiary pathway recognizes "that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur."  *J.W.K.*, 386 Wis. 2d 672, ¶19. However, it "does not change the elements or quantum of proof required." *D.J.W.*, 391 Wis. 2d 231, ¶34 (citation omitted).

¶15    Whether a petitioner has met its burden of proof to support a recommitment order is a mixed question of law and fact.  *J.W.J.*, 375 Wis. 2d 542, ¶15.  While we "uphold a circuit court's findings of fact unless they are clearly erroneous," whether the facts in question "satisfy the statutory standard is a question of law that we review de novo."  *Id.*

¶16    The County tacitly concedes that the circuit court did not orally specify under which standards Trevor is currently dangerous.  The County argues, however, that specificity is not required because no "magic words" are necessary. Although "magic words" are not required, our supreme court has made clear that

7

"circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶3. In other words, there must be a clear connection between the court's factual findings and one or more of the dangerousness standards contained in the subdivision paragraphs of § 51.20(1)(a)2. In this case, the court failed to identify at the recommitment hearing under which standards it found Trevor to be currently dangerous, and the court further failed to make the required clear connection between its factual findings and any specific current dangerousness standard in § 51.20(1)(a)2.

¶17 We note, however, that in the circuit court's written findings, a box is checked on a preformatted form indicating that the court found Trevor dangerous under WIS. STAT. § 51.20(1)(a)2.c. For purposes of our review, we will therefore assume without deciding that the court's vague oral references to portions of § 51.20(1)(a)2.a. and c. during the recommitment hearing, coupled with its written findings and order, suffice to comply with ***D.J.W.***'s mandate. Nevertheless, we conclude that the County failed to present clear and convincing evidence that Trevor is currently dangerous under either of the two standards referenced by the court.

¶18 For the circuit court to find Trevor dangerous under WIS. STAT. § 51.20(1)(a)2.a., as viewed through the lens of § 51.20(1)(am), the County was required to prove by clear and convincing evidence that if treatment were withdrawn, there was a substantial probability that Trevor would physically harm himself or others, as manifested by evidence of threats or attempts at suicide or serious bodily harm. *See* § 51.20(1)(a)2.a. In finding Trevor dangerous, the court summarily stated that Trevor would "present as a substantial probability of physical impairment or injury to himself" if treatment were withdrawn and that

8

Trevor "has had suicidal ideations in the past." The court, however, made no findings regarding the details of Trevor's suicidal ideations or when they occurred. Nor could the court do so, as the County did not present any evidence regarding the details of such ideations and the County provided no explanation as to why withdrawing treatment would cause Trevor to again have suicidal ideations. Current evidence of dangerousness at the time of the recommitment hearing is required, not merely evidence of past dangerousness. *K.E.K.*, 395 Wis. 2d 460, ¶3.

¶19 To the extent the circuit court relied on Dr. Coates' testimony that he believed suicide to be a possible danger, such reliance was misplaced. Coates explained this belief stemmed from the fact that "[t]he diagnosis of schizophrenia carries with it an increased risk of death from an unnatural cause … [which] could be suicide." Coates did not say that Trevor himself had an increased risk of death due to suicide or any other unnatural cause, nor did the court make such a finding. Coates' general testimony about the risk of death associated with a schizophrenia diagnosis is insufficient to show by clear and convincing evidence that Trevor is currently dangerous. The County therefore failed to prove by clear and convincing evidence that Trevor is currently dangerous under WIS. STAT. § 51.20(1)(a)2.a. and (1)(am), and the court's findings to the contrary are clearly erroneous.

¶20 For the circuit court to find Trevor dangerous under WIS. STAT. § 51.20(1)(a)2.c., as viewed through the lens of § 51.20(1)(am), the County was required to prove by clear and convincing evidence that there was a substantial likelihood that Trevor would be a proper subject for commitment if treatment were withdrawn because Trevor would evidence "such impaired judgment" manifested by evidence of a pattern of acts or omissions, that there was "a substantial

probability of physical impairment or injury to himself … or other individuals." *See* § 51.20(1)(a)2.c., (1)(am). As noted above, in the court's written order, a box is checked indicating that the court found Trevor to be dangerous under this standard. However, the preformatted form order lists the standard only in isolation and provides no detail as to why the court concluded Trevor met this standard.

¶21 In its oral ruling, the circuit court appeared to rely upon WIS. STAT. § 51.20(1)(a)2.c., finding that Trevor "suffers such impaired judgment that if treatment were withdrawn he would present as a substantial probability of physical impairment or injury to himself or to others." In support of this finding, the court stated that Trevor has a "history of substance abuse, coupled with his medications … [and] does not have insight into his mental health condition." The court mentioned Trevor's past suicidal ideations and that he "has displayed aggressive behavior towards others."

¶22 The County, however, failed to provide any details regarding Trevor's inconsistent medication regimen or its effects, and it did not show how Trevor's history of substance use, medication noncompliance, or lack of insight creates a *substantial* probability of injury to himself or anyone else. Despite testifying to Trevor's noncompliance with his medication regimen, Dr. Starr testified that he was unaware of Trevor displaying any psychotic behaviors. Trevor testified that he was willing to take his medications and follow through with a voluntary treatment plan.

¶23 During his cross-examination, Dr. Coates stated he had no knowledge of Trevor recently causing injury to another person. While Dr. Starr explained that, in the past, Trevor "has made suicide attempts and threats to kill other people, including his treatment providers," he provided no evidence as to

when Trevor engaged in such behaviors. The County failed to provide details of any aggressive behavior on Trevor's part, when it occurred, or to whom the behavior was directed. Finally, as noted above, the County provided no specific evidence regarding Trevor's suicidal ideations. Thus, the County failed to provide clear and convincing evidence that Trevor would be currently dangerous under WIS. STAT. § 51.20(1)(a)2.c. if treatment were withdrawn, and the circuit court's findings in this regard are also clearly erroneous.

¶24 At best, the County presented evidence that Trevor failed to properly care for himself years ago such that he suffered from life-threatening hyponatremia; at some unknown time, Trevor had unspecified suicidal ideations; Trevor possibly attempted suicide sometime in the past; at some unknown time Trevor may have acted aggressively toward others, including treatment providers in an unspecified manner, and threatened to kill them; and Trevor is "non-compliant, using marijuana, [and] not taking his medications consistently." Based upon this evidence, the circuit court found that Trevor "suffers such impaired judgment that if treatment were withdrawn he would present as a substantial probability of physical impairment or injury to himself or to others." The evidence presented, however, does not support this finding.

¶25 As previously stated, the circuit court is required to make a finding of *current* dangerousness. *K.E.K.*, 395 Wis. 2d 460, ¶3. Yet, the court itself recognized that "some of the dangerous conduct that has been testified to here … is somewhat dated." Doctor Coates testified that Trevor has not been hospitalized recently due to hyponatremia. It is unclear when Trevor last had suicidal ideations, and Coates testified that Trevor specifically denied having any suicidal ideations the last time he interviewed him. There were no details provided regarding Trevor's aggressive behavior. The County also neglected to

11

present evidence as to how Trevor's medication noncompliance or substance use created any substantial probability of physical impairment or injury to himself or others.

¶26 "[T]here is a key distinction between describing behavior that is erratic, odd or even concerning, and evidencing specific behavior that is likely dangerous." *Trempealeau Cnty. Dep't of Soc. Servs. v. T.M.M.*, No. 2021AP100, unpublished slip op. ¶13 (WI App Nov. 12, 2021).[5] The evidence presented by the County does not support a finding of Trevor's current dangerousness.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

---

[5] An unpublished opinion that is authored by a single judge under WIS. STAT. § 752.31(2) and that is issued on or after July 1, 2009, may be cited for its persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).