# COURT OF APPEALS
# DECISION
# DATED AND FILED

## February 7, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP502**

STATE OF WISCONSIN

Cir. Ct. No. **2013ME26**

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE MENTAL COMMITMENT OF K. L.:

BARRON COUNTY,

    PETITIONER-RESPONDENT,

V.

K. L.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Barron County: J. MICHAEL BITNEY, Judge. *Affirmed.*

¶1 GILL, J.[1] Katie[2] appeals a WIS. STAT. ch. 51 recommitment order and an order for involuntary medication and treatment.[3] Katie argues that the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

evidence presented by Barron County was insufficient to prove that she was dangerous. Katie further argues that the circuit court's findings were insufficient to establish dangerousness and violated the requirements of *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277.

¶2     We disagree as to both issues. The County met its burden to prove Katie was dangerous by clear and convincing evidence under WIS. STAT. § 51.20(1)(a)2.d. Additionally, the circuit court explicitly found in its written order that Katie was dangerous under § 51.20(1)(a)2.d. Therefore, we affirm.

## BACKGROUND

¶3     At the time of this recommitment, Katie was a sixty-one-year-old woman who lived in a group home. Katie was initially committed in 2013 and has been recommitted annually since then. In May 2021, the County filed a petition to extend Katie's commitment, which is the petition at issue in this appeal. The County's petition alleged that Katie was dangerous because there was a substantial likelihood, based on her treatment record, that Katie would become a proper subject for commitment if treatment were withdrawn.

¶4     Doctor William Platz submitted a report that was received into evidence at the recommitment hearing. In the report, Platz opined that Katie was

---

[2] For ease of reading, we refer to the appellant in this confidential appeal using a pseudonym, rather than her initials.

[3] An order allowing for involuntary medication and treatment requires the existence of a valid commitment order. *See* WIS. STAT. § 51.61(1)(g)3. Katie challenges both her recommitment order and her involuntary medication order; however, Katie does not raise any arguments specifically pertaining to the involuntary medication order. Regardless, if the commitment order were reversed, reversal of the associated involuntary medication order would also be required.

dangerous under the third and fourth dangerousness standards in WIS. STAT. § 51.20(1)(a)2.c.-d., as well as under the recommitment standard in § 51.20(1)(am).

¶5     At Katie's recommitment hearing, Platz testified that Katie has a diagnosis of schizophrenia, a treatable, chronic condition with various symptoms including disorganized thinking, hallucinations, and delusional belief systems. Similar to his report, Platz testified that he believed there was a substantial likelihood Katie would become a proper subject for commitment again if treatment were withdrawn. Platz also opined that Katie has impaired insight and judgment as it relates to her condition. Platz further testified that Katie has had difficulty caring for herself and making some medical decisions, and, in the past, she has been "inappropriate in terms of her dress" and "intrusive to other clients in the group home."

¶6     Angela Mandera, the program manager of the group home where Katie resides, testified at the recommitment hearing that Katie requires prompts for grooming and hygiene, such as putting on clean clothes and brushing her teeth and hair. Mandera further testified that sometimes Katie needs physical assistance for certain tasks, such as making the bed, getting dressed, and eating. Mandera stated that on two prior occasions within the past year, Katie had "cheek[ed]" her medications instead of swallowing them. Mandera opined that it was unlikely Katie would take her medications on her own. Mandera stated that this unlikeness was due in part to the "level of steps" Katie would need to complete to manage taking her medications on her own. Regarding Katie's actions toward others, Mandera testified that Katie "can often be extremely intrusive toward[] the other clients and the staff in the household" and that she "needs a lot of reminders … [to] not physically touch[] staff or other[s]." Lastly, Mandera

testified that there were "several occasions where [Katie] ha[d] come out of her room with her breasts exposed or walk[ed] from the bathroom to her bedroom without any clothing on."

¶7      Additionally, the County called Amelia Collins, a social worker employed by the Barron County Department of Health and Human Services, to testify at the recommitment hearing. Collins testified that the Department had "fears that if [Katie] were to return to independent living, she would not be complying with her medications" and would no longer engage with the Department's services.

¶8      Katie also testified at the hearing. Katie testified that, prior to being committed, she had lived independently for years. Katie stated that she does not believe that her current medications are helpful. She further stated that while she does not like the side effects of her current medications, she would continue to take them if released from commitment. Katie denied ever exposing herself.

¶9      The circuit court concluded that the County had established grounds for the extension of Katie's commitment. The court found that Katie had a treatable mental illness and concluded that Katie "creates a substantial probability of risk of harm to herself or others." The court further found that Katie had "impaired judgment" and "significantly impaired boundaries." While the court noted that Katie may have lived independently in the past, the court stated that

> at this stage of her life, it's clear to the [c]ourt that [Katie] does not have the ability to be independent without creating a substantial risk of physical harm to herself or perhaps others. When she goes out inappropriately dressed, when she goes out exposed, that creates a vulnerability. When she doesn't appreciate boundaries and makes contact with people, that creates the risk of harm to herself or others from reactions by people that may be either offended or threatened by her behavior.

4

As to Katie's sense of awareness, the court noted that Katie has stated to others that she does not believe she has a problem.

¶10   With respect to the involuntary medication order, the circuit court found "more credible the testimony and evidence of the doctor and the other witnesses that have shown a pattern of behavior that [Katie] is reluctant to take her medications." The court noted that Katie does not "like the medications that she takes … [and] has indicated she doesn't want to and is unwilling to continue to take them." Further, the court expressed concern that Katie lacks "the ability to manage her medications" and that "if [Katie] were left to her own devices, she would stop taking the medications, she would spiral downward, her symptoms would become worse, and it would likely result in her injuring herself or being rehospitalized or worse."

¶11   At the end of the hearing, the circuit court ordered that Katie be recommitted for twelve months, that she not possess firearms, and ordered the involuntary administration of medication and treatment.

¶12   Afterward, the circuit court checked two boxes on its written order, indicating that it found Katie dangerous under the third and fourth dangerousness standards listed in WIS. STAT. § 51.20(1)(a)2. Specifically, the court checked the box corresponding to § 51.20(1)(a)2.d., expressing that there was "a substantial probability that death, serious physical injury, serious physical debilitation, or serious physical disease will immediately ensue unless [Katie] receives prompt and adequate treatment for this mental illness." The court also checked the box corresponding to § 51.20(1)(a)2.c., stating that Katie presented "a substantial probability of physical impairment or injury to … herself or other individuals due to impaired judgment." Katie now appeals.

## DISCUSSION

¶13 "Whether the County presented clear and convincing evidence to justify recommitment is a mixed question of fact and law." *Sauk County v. S.A.M.*, 2022 WI 46, ¶17, 402 Wis. 2d 379, 975 N.W.2d 162. A circuit court's findings of fact are upheld unless they are clearly erroneous. *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783; WIS. STAT. § 805.17(2). "Whether the facts satisfy the statutory standard is a question of law that we review de novo." *J.W.J.*, 375 Wis. 2d 542, ¶15.

¶14 A recommitment order requires proof that an individual is mentally ill, a proper subject for treatment, and currently dangerous. *See Waupaca County v. K.E.K.*, 2021 WI 9, ¶3, 395 Wis. 2d 460, 954 N.W.2d 366; WIS. STAT. § 51.20(1). There are "five standards by which a County can show that an individual is dangerous." *Portage County v. J.W.K.*, 2019 WI 54, ¶17, 386 Wis. 2d 672, 927 N.W.2d 509; § 51.20(1)(a)2.a.-e. Each of the first four dangerousness standards requires the County to present evidence of recent acts or omissions demonstrating that the individual is a danger to himself or herself or to others. Sec. 51.20(1)(a)2.a.-e. "Because an individual's behavior might change while receiving treatment," § 51.20(1)(am) provides an alternative pathway for showing current dangerousness without the requirements of recent behavior "if the individual has been the subject of treatment for mental illness immediately prior." *J.W.K.*, 386 Wis. 2d 672, ¶19. Under § 51.20(1)(am), the County must show "that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn."

¶15     To ensure clarity, and to respect an individual's liberty interest, in appeals involving WIS. STAT. ch. 51 commitments, our supreme court has held that "circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶40.   This requirement "provides increased protection to patients to ensure that recommitments are based on sufficient evidence" and "clarif[ies] issues raised on appeal of recommitment orders and ensure[s] the soundness of judicial decision making." ***Id.***, ¶¶43-44.

¶16     Katie contends that the evidence presented by the County was insufficient to prove that she met the dangerousness standard under WIS. STAT. § 51.20(1)(a)2.d.[4]   For an individual to meet the criteria under the fourth dangerousness standard, the individual must be

> unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness.

Sec. 51.20(1)(a)2.d.  Katie argues that while "[w]alking about in a state of undress, asking personal questions of residents, having difficulty making medical decisions and caring for [oneself], needing prompts to tend to hygiene needs, [and] needing

---

[4] The circuit court also concluded that Katie was dangerous under the third dangerousness standard.  *See* WIS. STAT. § 51.20(1)(a)2.c.  However, because we conclude that the evidence was sufficient under § 51.20(1)(a)2.d. we need not address this issue.  *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (the court of appeals need not address all issues if one issue raised by the parties is dispositive).

assistance to make [a] bed" may be cause for mild concern, these effects do not amount to a substantial probability "that death, serious physical injury [or] serious physical debilitation" will imminently ensue. *See **id.***

¶17 We reject this argument and conclude that the County presented sufficient evidence to establish that Katie met the fourth dangerousness standard under WIS. STAT. § 51.20(1)(a)2.d. The County presented evidence that Katie was unable to live independently. In particular, the witnesses for the County testified that Katie needs assistance with basic tasks such as brushing her teeth and hair, putting on clean clothes, making her bed, and eating. Katie also needs prompts to encourage her to take her medications. Within the past year, Katie was also found "to cheek her medications" at least twice. Based on this evidence, the circuit court appropriately concluded that there was a substantial probability "that death, serious physical injury [or] serious physical debilitation" would imminently ensue if treatment were withdrawn. The court could logically find that, absent treatment, Katie would not be eating on her own or appropriately maintaining her hygiene.

¶18 Katie also argues that the incidents described by the witnesses are not necessarily evidence of current dangerousness because they could have occurred anytime within the last year. Katie is correct that every recommitment requires evidence of current dangerousness. *See **D.J.W.***, 391 Wis. 2d 231, ¶34 ("[e]ach extension hearing requires proof of *current* dangerousness." (alteration in original; emphasis added)). For a recommitment hearing, the County may meet the current dangerousness standard by showing there is a substantial likelihood of dangerousness if treatment is withdrawn. *See* WIS. STAT. § 51.20(1)(am).

¶19 Platz, in his report and testimony, found that without treatment Katie would become a proper subject for commitment again, which the circuit expressly

8

relied on in making its findings. Moreover, Mandera testified to the difficulties Katie has with every day tasks, including feeding herself, and with dressing appropriately and medication compliance. There was also testimony from Mandera that Katie "cheek[ed]" her medication twice within the past year. Based upon all the evidence the County presented, the circuit court reasonably concluded that Katie demonstrated a likelihood of dangerousness if treatment were withdrawn and that these acts met the dangerousness standard under WIS. STAT. § 51.20(1)(a)2.d.

¶20 Katie further notes that the County's petition for recommitment did not specify which standard of dangerousness was being alleged. Katie concedes, however, that during the final hearing the County argued for a finding of dangerousness under the third and fourth dangerousness standards. The circuit court ultimately agreed with the County's argument. We note that while the County did not specify a standard of dangerousness in its petition for recommitment, the County proved by clear and convincing evidence at the recommitment hearing that Katie met at least one of the five dangerousness standards. *See Marathon County v. D.K.*, 2020 WI 8, ¶28, 390 Wis. 2d 50, 937 N.W.2d 901 (due process requires the petitioner to prove by clear and convincing evidence that the individual is dangerous). The County met this burden when it presented sufficient evidence of Katie meeting the dangerousness standards under WIS. STAT. § 51.20(1)(a)2.d. As shown above, the County provided multiple examples of Katie meeting this dangerousness standard.

¶21 Katie next argues that the circuit court's findings were insufficient to establish dangerousness and do not comport with the requirements of *D.J.W.* Katie contends that the "statute requires that [circuit] courts make specific factual findings with reference to the standard of dangerousness upon which the

recommitment is based." Katie argues that the court made no specific findings at all regarding dangerousness.

¶22 While the circuit court did not explicitly reference a dangerousness standard in its oral ruling, the court's written order—which followed its oral decision—specified that the court concluded Katie was dangerous under WIS. STAT. § 51.20(1)(a)2.c. and d., the third and fourth dangerousness standards. Together with the court's oral ruling that Katie's behavior due to her mental illness "create[d] a substantial probability of risk of harm to herself or others" and that Katie "ha[d] certainly significantly impaired judgment," the court satisfied *D.J.W.*'s specificity requirements. The court's comments at the conclusion of the hearing, reviewed in light of the written order, show that the court considered specific facts in connection to dangerousness. Further, there is no question which dangerousness standards the court relied on when it ordered Katie's recommitment.

¶23 Katie also argues that this case is similar to *C.B.O.*, where we held that a circuit court's cursory reference to "physical harm to others" was insufficient to establish a specific standard of dangerousness under WIS. STAT. § 51.20(1)(a)2. because it could reference either § 51.20(1)(a)2.b. or c. *See Trempealeau County v. C.B.O.*, Nos. 2021AP1955, 2022AP102, unpublished slip op. ¶29 (WI App Aug. 30, 2022).[5] *C.B.O.* is materially distinguishable from the case at hand. In *C.B.O.*, "it [was] unclear from the record which standard

---

[5] An unpublished opinion authored by a single judge or a member of a three-judge panel and issued on or after July 1, 2009, may be cited for its persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

provided the basis for the court's decision." ***Id.*** Here, the written order explicitly lists the two dangerousness standards the court relied on as a basis for its decision.

¶24 In sum, the County met its burden to prove by clear and convincing evidence that Katie was dangerous under WIS. STAT. § 51.20(1)(a)2.d. The circuit court made specific factual findings related to dangerousness under that standard, and its findings were not clearly erroneous. The court's factual findings supported the court's conclusion that Katie met the requirement for recommitment under the fourth dangerousness standard. *See* § 51.20(1)(a)2.d. Therefore, we affirm the orders both for recommitment and involuntary medication and treatment.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.